UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------X
CATLIN INSURANCE COMPANY,

                               Plaintiff,                                CASE NO. 1:24-cv-4499

       -against-

CHAMP CONSTRUCTION COMPANY, AMERICAN
EMPIRE INSURANCE COMPANY, MERCHANT'S
MUTUAL INSURANCE COMPANY, NAVIGATOR'S
SPECIAL INSURANCE, AXIS INSURANCE,
NAVIGATORS INSURANCE COMPANY, GZA
GEOENVIRONMENTAL, INC., also known as GOLDBERG
ZOINO ASSOCIATES OF NEW YORK P.C., COMMERCE
& INDUSTRY INSURANCE, ACE AMERICAN
INSURANCE COMPANY, GILSANZ, MURRAY,
STEFICEK, LLP, CONTINENTAL CASUALTY
COMPANY, JOHN DOES 1-10 (said persons
being unknown and fictitious) and ABC COMPANIES
1-10 (said entities being unknown and fictitious).

                              Defendants.
-----------------------------------------------------------------------------X

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANT GZA GEOENVIRONMENTAL, INC's MOTION TO DISMISS

**MANNING GROSS + MASSENBURG LLP**
*Attorneys for Defendant,*
***GOLDBERG-ZOINO ASSOCIATES OF NEW YORK, P.C. i/s/h/a GZA EOENVIRONMENTAL, INC. a/k/a GOLDBERG ZOINO ASSOCIATES OF NEW YORK P.C.***
200 Vesey Street
25th Floor
New York, New York 10281
*(*212) 244-3333

**OF COUNSEL:**
**Scott K. Winikow, Esq.**
**Joshua S. Stern, Esq.**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS ................................................................................................i

TABLE OF AUTHORITIES .........................................................................................ii

PRELIMINARY STATEMENT ....................................................................................1

STATEMENT OF FACTS .............................................................................................2

    I.    THE HISTORY OF THE PROJECT
          AND GZA'S INVOVMENT ......................................................................2

    II.    THE STATE COURT PROCEEDING .......................................................4

    III.    PLAINTIFF'S FEDERAL LAWSUIT ........................................................5

ARGUMENT ...................................................................................................................6

    I.    PLAINTIFF'S CLAIMS AGAINST GZA MUST BE
         DISMISSED DUE TO LACK OF SUBJECT MATTER
         JURISDICTION .........................................................................................6

    II.    IN THE ALTERNATIVE, THE COURT MUST STAY
         THE CLAIMS AGAINST GZA PURSUANT TO THE
         WILTON/BRILLHARD ABSTENTION DOCTRINE ..........................9

         A.  STANDARD OF GRANTING A STAY ..........................................9

         B.  THE FACTORS WEIGHT IN FAVOR OF
             ISSUANCE OF A STAY .................................................................10

CONCLUSION ..............................................................................................................14

## **TABLE OF AUTHORITIES**

**Case**                                                                                                               **Page**

Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85 (2d Cir. 2023)............7

Allstate Ins. Co. v. Mazzola, 175 F.3d 255 (2d Cir. 1999).........................................6

Am. Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry
   Repair, Inc., No. CV 16-1541 (ADS)(AYS), 2017 WL 4118390
   (E.D.N.Y. Aug. 30, 2017).......................................................................................7

Atl. Cas. Ins. Co. v. Value Waterproofing, Inc.,
   918 F. Supp. 2d 243 (S.D.N.Y.) .............................................................................6

A & E Television Networks v. Genuine Entm't, Inc.,
   No. 09-CV-7422 (RJH), 2010 WL 2308092 (S.D.N.Y. June 10, 2010)...............11

Barbagallo v. Marcum LLP, No. 11 Civ. 1358(JBW),
   2012 WL 1664238 (E.D.N.Y. May 11, 2012) .......................................................7

Bellefleur v. Newark Beth Israel Med. Ctr.,
    888 N.Y.S.2d 81 (2d Dep't 2009) ........................................................................8

Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.,
   590 F. Supp. 187 (S.D.N.Y. 1984).......................................................................11

Brillhart v. Excess Ins. Co. of America, 316 U.S. 491 (1942) .................................9, 11

Brooks v. Judlau Contracting, Inc., 11 N.Y.3d 204 (2008) .......................................12

DiBuono v. Abbey, LLC, 944 N.Y.S.2d 280 (2d Dep't 2012) ..................................8

Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357 (2d Cir. 2003).............................9, 10

Dresser-Rand Co. v. Ingersoll Rand Co., No. 14 CIV. 7222 KPF,
   2015 WL 4254033 (S.D.N.Y. July 14, 2015) .......................................................8

Fed. Ins. Co. v. Garner,
   No. 15-CV-184 (DAB), 2016 WL 3554929 (S.D.N.Y. June 20, 2016) ..............11

FSP, Inc. v. Societe Generale, No. 02 CV 4786 (GBD),
   2003 WL 124515 (S.D.N.Y. Jan. 14, 2003) .........................................................7

ICBC Standard Sec., Inc. v. Luzuriaga, 217 F.Supp.3d 733 (S.D.N.Y. 2016)..........10

Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.,
    8 N.Y.S.3d 314 (1st Dep't 2015) ..........................................................................7, 8

In re Prudential Lines Inc., 158 F.3d 65 (2d Cir. 1998) ............................................6

Lafarge Canada Inc. v. Am. Home Assurance Co.,
    No. 15-CV-8957 (RA), 2018 WL 1634135 (S.D.N.Y. Mar. 31, 2018) ...............10-13

MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118 (2007) .....................................6

Nat'l Union Fire Ins. Co. v. Warrantech Corp.,
    2001 WL 194903 (S.D.N.Y. Feb. 27, 2001) ........................................................10, 13

Sawicki v. GameStop Corp., 966 N.Y.S.2d 447 (2d Dep't 2013) ..............................8

Reliance Ins. Co. of Illinois v. Multi-Fin. Sec. Corp.,
    No. 94-CV-6971 (SS), 1996 WL 61763 (S.D.N.Y. Feb. 13, 1996) ......................13

Steuhl v. Home Therapy Equip., Inc.,
    857 N.Y.S.2d 335 (3d Dep't 2008) ......................................................................8

Stoncor Grp., Inc. v. Peerless Ins. Co., 322 F. Supp. 3d 505 (S.D.N.Y.2018) ..........10, 13

TIG Ins. Co. v. Fairchild Corp., 2008 WL 2198087 (S.D.N.Y. May 27, 2008) ........10

Travelers Indent. Co. v. Philips Elecs. N. Am. Corp.,
    No. 02-CV-9800 (WHP), 2004 WL 193564 (S.D.N.Y. Feb. 3, 2004) ................11, 13

Travelers Prop. Cas. Corp. v. Winterthur Int'l,
    2002 WL 1391920 (S.D.N.Y. June 25, 2002) ......................................................12

Wilton v. Seven Falls Co., 515 U.S. 277 (1995) .......................................................9, 11

**PRELIMINARY STATEMENT**

Defendant Goldberg-Zoino Associates of New York, P.C. i/s/h/a GZA Environmental, Inc. a/k/a Goldberg Zoino Associates of New York P.C. ("GZA") submits this memorandum of law in support of its motion for an Order (i) dismissing pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff Catlin Insurance Company's ("Catlin" or "Plaintiff") claims against GZA relating to the duty to indemnify and defend as the Court lacks subject matter jurisdiction; (ii) in the alternative, staying the proceeding against GZA for all remaining claims pending resolution of the underlying tort action, entitled EMFT, LLC, et al. v. Broadway 371, LLC, et al., Index No. 156969/2016 which is pending in the Supreme Court of the State of New York, New York County (the "State Action"), and (iii) granting GZA such other and further relief as this Court deems just and proper.

As described in more detail below, Catlin's declaratory judgment claims related to any purported duty to indemnify and defend it alleges is owed by GZA in this action must be dismissed for the simple reason that these claims are not ripe for adjudication. Indeed, no liability has been adjudicated as to GZA, nor against Catlin's insureds, namely Elad Group Properties, LLC, Broadway 371 LLC, and the Board of Directors of the Franklin Place Condominium (collectively, "Broadway 371"). As a result, the Court simply lacks subject matter jurisdiction regarding these claims and they must be dismissed.

In the alternative, to the extent that any of Plaintiff's claims against GZA survive, these remaining claims, if any, should be stayed pursuant to the Wilton/Brillhart Abstention doctrine because this action is entirely duplicative of the earlier State Action, in which discovery is well underway, and because there are unresolved issues of fact that are determinative to the declaratory judgment issues that are also determinative in the State Court Action. Specifically, in both this action and in the State Court Action, which has been pending for almost 8 years and in which

1

discovery is underway, the courts will have to determine whether there is any liability arising out of GZA's services; whether the indemnification provision is enforceable; and whether the purported agreement containing the indemnification and duty to defend provision was ever executed by the parties. Issuing such a stay would avoid overlapping, and potentially inconsistent, resolution of these issues between the two actions.

Accordingly, GZA respectfully request that this Court (i) dismiss Catlin's claim related to the duty to indemnify and defend; and (ii) in the alternative, exercise its discretion and issue a stay of all remaining claims against GZA pursuant to the Wilton/Brilhart Abstention doctrine.

**STATEMENT OF FACTS**

**I.     The History of the Project and GZA's Involvement**

This action concerns the construction of a new ground up twenty-story condominium building with fifty-three (53) units located at 5 Franklin Place a/k/a 371 Broadway, New York, New York (the "Project") and damage that is alleged to have been sustained to the building located at 365 Broadway, New York, New York (the "365 Building") as a result of that construction. (Declaration of Joshua S. Stern, dated December 9, 2024 ("Stern Decl."), Exhibit A, State Court Complaint)

The Project has a long and tortured history. Initially, the Project site was acquired by an entity known as Franklin Place LLC ("Franklin Place") in 2006, which had intended to construct a 20-story, 55-unit condo. Franklin Place completed the foundation and the initial lower-floor structure; however, the Project stalled and was then put back on the market. (Stern Decl., Exhibit B, Real Deal Article, dated July 20, 2012). Indeed, Robert Moezinia of EMFT acknowledged during his deposition that the 365 Building moved during this portion of the Project (prior to GZA's

involvement) and sustained substantial damage, which resulted in a lawsuit that was settled. GZA was not involved in this lawsuit. (Stern Decl., Exhibit C, Excerpts of Moezina Deposition).

Ultimately the Project site was sold in a foreclosure auction in September 2011 to Fishman Holding ("FH"), which planned to construct a 19-story, 58-unit condominium at the site. (Stern Decl., Exhibit B) In July 2012, FH sold the Project site to Broadway 371, LLC. *Id.* Upon information and belief, Elad is the managing member of Broadway 371, LLC. (Stern Decl., Exhibit A, ¶ 4) As of December 2012, a three-story concrete superstructure at the Project site existed on the site, and Elad intended to dismantle that structure to the basement level, re-design (by others) the foundation and reconstruct the superstructure into a 19-story condominium. (Stern Decl., Exhibit D, Unsigned GZA Proposal, § 1.1)

At that time, Broadway 371, LLC retained Goldberg Zoino Associates of New York PC, to perform the following services:

(1) Installation of geostructural instrumentation in order to monitor 365 Broadway (south) and 373-375 Broadway (north), which included two AMTS (Automated Motorized Total Stations) Monitoring Systems and sixty-six prisms;

(2) Pre-construction surveys of the NYCT tunnel structure, installation of prisms in the tunnel, vibration monitoring via seismographs, and a central data management website to store vibration data for the Project; and

(3) Geotechnical design services, including a pile calculation package for a 60 ton "I" design load and vertical mini piles, monitoring of the proposed vertical pile load test, preparation of a pile load test report, daily observations of the pile installation, and submission of NYC DOB TR-5 sign off for piles.

(Stern Decl., Exhibit D, pp. 13-15). GZA's services did not include a subsurface investigation, foundation design, pre-construction documentation services or vibration and crack gauge monitoring for the adjacent buildings. (Stern Decl., Exhibit D, pp. 13-15).

Notably, the terms of a December 6, 2012, Agreement, appear to never have been signed or executed by 371 Broadway LLC. (*Id.*)

Subsequently, GZA was advised that a stop work order for the Project was issued before GZA began work because a small section of underpinning had not been installed. In order to lift that stop work order, Broadway 371, LLC retained GZA, pursuant to a Change Order, to prepare Support of Excavation Drawings (SOE) for ten (10) linear feet at the southern portion of the site and to serve as the special inspector for this underpinning work. (Stern Decl., Exhibit E, Change Order)

GZA completed all services for this Project, at the latest, by the end of 2015.

## II.     The State Court Proceeding

On February 21, 2017, EMFT, LLC ("EMFT"), the owner of the 365 Building filed a summons and complaint in the Supreme Court of New York, County of New York (the "State Court Action") against Broadway 371. (Stern Decl., Exhibit A) Specifically, EMFT alleges three causes of action against Broadway 371, namely:

    (a) The First Cause of Action alleges that Broadway 371 is responsible for the construction of an extension to the chimneys of 365 Broadway and seeks the costs for that extension;

    (b) The Second Cause of Action concerns damages that occurred to the 365 Broadway during unspecified construction activities at the Project.

    (c) The Third Cause of Action seeks specific performance and requests that 371 Broadway remove dissembled scaffolding and other debris on the roof of 365 Broadway.

4

On March 7, 2018, the EMFT Action was consolidated with a related action brought by the owners of 373-375 Broadway. (Stern Decl., Exhibit F)  The action brought by the owners of 373-375 Broadway has since been discontinued with prejudice on October 12, 2023. (Stern Decl., Exhibit G)

In the State Court Action, on January 14, 2020, Broadway 371 filed a Third-Party Summons and Complaint against GZA and 15 other entities (practically every entity involved with the Project, including without limitation Champ and Gilsanz) (the "Third Party Action"), asserting boilerplate causes of action for (i) breach of contract; (ii) negligence; (iii) common-law indemnification; (iv) common-law contribution; and (v) contractual indemnification. (Stern Decl., Exhibit H)

Discovery in the State Court Action is ongoing and there is a Note of Issue/Certification for Readiness of Trial date of February 2, 2025. (Stern Decl., Exhibit I)

### III.    Plaintiff's Federal Lawsuit

The present declaratory judgment action was recently filed in September 2024 (more than 7 years after the State Court Action) by Plaintiff Catlin Insurance Company ("Plaintiff" or "Catlin") against two separate classes of defendants, namely (i) three of the defendants in the State Court Action, namely GZA, Champ Construction Company, and Gilsanz; and (ii) various insurers of the above entities. (Stern Decl., Exhibit J). Specifically, Catlin seeks declaratory relief that is duplicative with the Third-Party Action in the State Court Action, namely that the defendants have a contractual obligation to defend and indemnify Broadway 371 in connection with the State Court Action.

**ARGUMENT**

I. **PLAINTIFF'S CLAIMS AGAINST GZA MUST BE DISMISSED DUE TO LACK OF SUBJECT MATTER JURISDICTION**

By way of this Federal Action, Catlin Insurance seeks, *inter alia*, a declaratory judgment that GZA must defend and indemnify its insured Broadway 371 related to the allegations contained in the State Court Action. In doing so, Catlin stands in the shoes of Broadway 371 and is subject to any defenses that GZA would have against Broadway 371. See Allstate Ins. Co. v. Mazzola, 175 F.3d 255, 258 (2d Cir. 1999)("The doctrine of equitable subrogation allows insurers to "stand in the shoes" of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss."), However, pursuant to Fed. R. Civ. P. 12(b)(1), Catlin's claims related to GZA's purported duties to contractually indemnify Broadway 371 must be dismissed because such claims are simply not ripe for adjudication.

Indeed, the Declaratory Judgment Act provides that "[i]in a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. 28 U.S.C. § 2201. The words "case of actual controversy" incorporate the ripeness requirements of Article III. MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126–27 (2007).

A declaratory judgment action is ripe for adjudication if "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." In re Prudential Lines Inc., 158 F.3d 65, 70 (2d Cir. 1998) (citation omitted). "Courts often distinguish between the duty to defend and the duty to indemnify in determining whether each issue posed in a declaratory judgment action is ripe for adjudication." Atl. Cas. Ins. Co. v. Value

6

Waterproofing, Inc., 918 F. Supp. 2d 243, 261 (S.D.N.Y.), aff'd sub nom. Atl. Cas. Ins. Co. v. Greenwich Ins. Co., 548 F. App'x 716 (2d Cir. 2013).

In this regard, Courts have consistently ruled that "the duty to indemnify is triggered by a determination of liability." Admiral Ins. Co. v. Niagara Transformer Corp., 57 F.4th 85, 94 (2d Cir. 2023). Generally, claims involving indemnification obligations are not justiciable until liability has been imposed upon the party to be indemnified. FSP, Inc. v. Societe Generale, No. 02 CV 4786 (GBD), 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003) ("Claims concerning indemnification obligations, however, are not ripe for adjudication until liability has been imposed upon the party to be indemnified."), *aff'd and remanded*, 350 F.3d 27 (2d Cir. 2003), and *adhered to on reconsideration*, No. 02 CV 4786 (GBD), 2005 WL 475986 (S.D.N.Y. Feb. 28, 2005); Am. Empire Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc., No. CV 16-1541 (ADS)(AYS), 2017 WL 4118390, at *6 (E.D.N.Y. Aug. 30, 2017) (finding that "claims concerning indemnification obligations are not ripe for adjudication until liability has been imposed upon the party to be indemnified"), *report and recommendation adopted*, No. 16-CV-1541 (ADS)(AYS), 2017 WL 4119266 (E.D.N.Y. Sept. 15, 2017).

Similarly, Courts have consistently held that where the contractual indemnitor is not an insured, its duty to defend is no broader than and is coextensive with its duty to indemnify. See, *e.g.*, Barbagallo v. Marcum LLP, No. 11 Civ. 1358(JBW), 2012 WL 1664238, at *5 (E.D.N.Y. May 11, 2012) ("Where, as here, the contractual indemnitor is not an insurer, the indemnitor's duty to defend is substantially narrower. In such cases, the indemnitor's duty to defend its contractual indemnitee is no broader than its duty to indemnify. Since [defendant] is not an insurer, his duty to defend is coextensive with his duty to indemnify." (internal citations and quotation marks omitted)); Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp., 8 N.Y.S.3d 314, 315

7

(1st Dep't 2015) ("No finding has yet been made as to [defendant's] negligence, and thus no determination can yet be made as to its obligation to indemnify. As an indemnitor, [defendant] is not an insurer, and in that context its duty to defend is no broader than its duty to indemnify."); Sawicki v. GameStop Corp., 966 N.Y.S.2d 447, 450 (2d Dep't 2013) ("[S]ince the ... defendants are not insurers, their duty to defend was no broader than their duty to indemnify."); DiBuono v. Abbey, LLC, 944 N.Y.S.2d 280, 285 (2d Dep't 2012); Steuhl v. Home Therapy Equip., Inc., 857 N.Y.S.2d 335, 339–40 (3d Dep't 2008) (finding that the lower court "properly denied [defendant's] motion for summary judgment on its cross claim seeking indemnification and defense" where, because plaintiff was "not an insurer, its duty to defend [wa]s no broader than its duty to indemnify").

In this case, GZA is not an insurer and Plaintiff does not qualify as GZA's insured. Accordingly, as there has been no adjudication of liability made with regard to the State Court Action, Catlin's declaratory judgment action as to GZA's purported duty to indemnify is not ripe, and the Court must dismiss such claims as lacking subject matter jurisdiction. See, e.g. Dresser-Rand Co. v. Ingersoll Rand Co., No. 14 CIV. 7222 KPF, 2015 WL 4254033, at *9 (S.D.N.Y. July 14, 2015)("[A]djudication of Ingersoll Rand's defense obligation, which under New York law and the terms of the EPA is co-extensive with its indemnification obligation, would be premature."); Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp., 913 N.Y.S.2d 29, 30 (1st Dep't 2010) ("Because there has been no showing that defendant was negligent, any order requiring defendant to defend or indemnify is premature."); Bellefleur v. Newark Beth Israel Med. Ctr., 888 N.Y.S.2d 81, 84 (2d Dep't 2009).

## II. IN THE ALTERNATIVE, THE COURT MUST STAY

8

## THE CLAIMS AGAINST GZA PURSUANT TO THE
## WILTON/BRILLHART ABSTENTION DOCTRINE

### A. Standard of Granting a Stay

The Supreme Court has held that "the Declaratory Judgment Act has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286 (1995). In Wilton, the Supreme Court held that "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' [] if it permitted the federal declaratory action to proceed." Id. at 283, 115 S.Ct. 2137, quoting Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942). Wilton held that the key inquiry for a district court making this determination is "whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state court." Id.

In making this determination, the Second Circuit has approved of a number of factors that a court may use in deciding whether to exercise its discretion including:

> whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty.... ([3]) whether the proposed remedy is being used merely for "procedural fencing" or a "race to res judicata"; ([4]) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; and ( [5] ) whether there is a better or more effective remedy.

Dow Jones & Co. v. Harrods Ltd., 346 F.3d 357, 359-60 (2d Cir. 2003) (per curiam) (citations omitted). District Courts in this Circuit also consider these additional factors in determining whether abstention is appropriate:

9

> (1) the scope of the pending state proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the necessary parties have been joined; and (4) whether such parties are amenable to process in that proceeding[;] (5) avoiding duplicative proceedings[;] (6) avoiding forum shopping[;] (7) the relative convenience of the fora; (8) the order of filing; and (9) choice of law.

TIG Ins. Co. v. Fairchild Corp., 2008 WL 2198087, at *2-3 (S.D.N.Y. May 27, 2008) (alterations omitted) (quoting Nat'l Union Fire Ins. Co. v. Warrantech Corp., 2001 WL 194903, at *3 (S.D.N.Y. Feb. 27, 2001); accord Lafarge, 2018 WL 1634135, at *4; ICBC Standard Sec., Inc. v. Luzuriaga, 217 F.Supp.3d 733, 739 (S.D.N.Y. 2016). As the Court stated in Dow Jones,

> [w]hen all the lines are drawn and the terms of limitation are spelled out, and when rules of caution are put to the test, however finely the distinctions cut, what remains of the courts' demarcation of their discretionary role is a case-by-case approach circumscribed by recognition that what the statute bestows upon them is discretion, not ambitions; that a free hand does not mean free rein, and that in practice, in giving expression to the confidence Congress reposed upon them, the courts' response should be measured and orderly. *Dow Jones & Co., Inc.* 237 F. Supp. 2d at 436.

Indeed, in Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-CV-8957 (RA), 2018 WL 1634135, at *5–6 (S.D.N.Y. Mar. 31, 2018), the Court invoked Wilton abstention where "the factual and legal issues in both cases overlap significantly," even though certain insurers that were parties to the federal action were not involved in the underlying litigation. See also Stoncor Grp., Inc. v. Peerless Ins. Co., 322 F. Supp. 3d 505, 514–15 (S.D.N.Y.2018).

    **B.**    **The Factors Weigh In Favor Of Issuance Of a Stay**

In the alternative, to the extent that Catlin's claims against GZA are not dismissed, the Court should issue a stay under the Wilton/Brillhart Abstention Doctrine because the claims asserted against GZA by Catlin in this action are identical to the contractual indemnification claims

10

being asserted by Broadway 371 in the earlier filed Third-Party Action pending in State Court Action, where discovery is underway and the Court having issued a Note of Issue date of February 5, 2025.

In fact, the present circumstance is similar to that in Lafarge Canada Inc., 2018 WL 1634135, at *5–6 (S.D.N.Y. Mar. 31, 2018), where the Court issued a stay due to the myriad of factual and legal overlap between the two cases. As the Court in Lafarge made clear with regard to issues of duty to indemnify and defend, such as are pending *sub judice*, that it was more appropriate for the factual and legal issues in the case to be decided by the more advanced non-federal proceeding.

> Lafarge's liability might never arise and, even if it does, the Court will be in a far better position to rule on how that liability affects insurance coverage when the court closest to the full factual record—the Quebec court—has had the opportunity to weigh in. *See, e.g., Fed. Ins. Co. v. Garner,* No. 15-CV-184 (DAB), 2016 WL 3554929, at *7 (S.D.N.Y. June 20, 2016) (finding a declaratory-judgment action regarding the duty to indemnify "premature" because it had "many unresolved issues in common with the Underlying Actions, such as [the insured's] liability"); *Bellefonte Reinsurance Co. v. Aetna Cas. & Sur. Co.,* 590 F. Supp. 187, 192 (S.D.N.Y. 1984) (similar). The Canadian courts are already familiar with the underlying facts from the First Wave and are now progressing to the specific facts related to Lafarge's conduct. *Cf., e.g., A & E Television Networks v. Genuine Entm't, Inc.,* No. 09-CV-7422 (RJH), 2010 WL 2308092, at *3 (S.D.N.Y. June 10, 2010) (declining to exercise jurisdiction where the underlying state case had "progressed deep into discovery"). This Court, rather than duplicate those ongoing efforts, need only wait to reap their benefits and consider the record established there. This approach will help prevent a situation in which, as the Insurers note, "alternate conclusions [are reached] on a different record." Ds' Supp. Mem. at 8 (Dkt. 106); *cf. Travelers Indent. Co. v. Philips Elecs. N. Am. Corp.,* No. 02-CV-9800 (WHP), 2004 WL 193564, at *3 (S.D.N.Y. Feb. 3,2004) ("Continuing this action in the face of the procedurally advanced [state] action would cause ... vexatious waste of judicial resources and gratuitous interference[.]" (internal quotations omitted)).

11

Lafarge Canada Inc., 2018 WL 1634135, at *7.

Similarly, in the present case, there has been no adjudication of liability against any party, let alone GZA, who vigorously contests that it committed any wrongdoing, particularly as the damage to 365 Broadway and the issuance of a stop-work order had already taken place prior to GZA commencing any work.  In fact, regarding questions of liability, more than 15 separate parties are defendants in the State Court Action, and that proceeding is the best and most efficient venue for the trier of fact to determine liability because it is where all project participants, including Broadway 371, have been sued.  Travelers Prop. Cas. Corp. v. Winterthur Int'l, 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002)("[T]he duty to indemnify turns not on the allegations of the complaint but on the actual liabilities as borne out by the facts.").

Moreover, the State Court Action alleges direct liability against Broadway 371, and based on the purported terms of the proposal that was never signed by Broadway 371, there is a factual and legal question as to whether those terms purport to require GZA to defend and indemnify Broadway 371 for Broadway's 371's own negligence, which is prohibited pursuant to General Obligations Law § 5-322.1.  See, e.g. Brooks v. Judlau Contracting, Inc., 11 N.Y.3d 204, 208, 898 N.E.2d 549, 551 (2008).  Indeed, the purported indemnification provision neither contains any failsafe language such as "to the fullest extent permitted by law," nor is it specifically limited to the negligence of GZA. Id.  These are factual and legal issues that will need to be decided before any indemnification/duty to defend liability can attach against GZA and augur in favor issuing a stay in favor of the more advanced State Court Action.

Additionally, upon information and belief, it does not appear that Broadway 371 ever executed the terms of the December 6, 2012, proposal containing the purported indemnification provision.  This is also a question of fact that must be determined in both the State and Federal

Actions before liability can be had against GZA for both its supposed indemnification and duty to defend obligations.  See, e.g. Stoncor Grp., Inc. v. Peerless Ins. Co., 322 F. Supp. 3d 505, 516 (S.D.N.Y. 2018).  Indeed, the Court in Lafarge specifically declined to exercise jurisdiction over the duty to defend obligations, because of the risk of contradictory fact finding,

> To do so now would risk duplicative or contradictory fact finding— a risk that cautions strongly against the exercise of discretionary jurisdiction for both duties at present. *See Nationwide Ins. v. Zavalis*, 52 F.3d 689, 694 (7th Cir. 1995) (noting that, when underlying facts and the nature of the insured's conduct are disputed, "the court presiding over the declaratory action typically cannot decide" the duty to defend without resolving disputes better left to the court in the underlying action); *Dresser-Rand Co. v. Ingersoll Rand Co.,* No. 14-CV-7222, 2015 WL 4254033, at *9 (S.D.N.Y. July 14, 2015) (finding adjudication of a duty to defend premature when coextensive with an unripe duty to indemnify).

Lafarge, 2018 WL 1634135, at *9.

Lastly, the choice of law question is also a factor in its own right that weighs in favor of issuing a stay in this action. See, e.g., Travelers Indent. Co., 2004 WL 193564, at *3 (noting that the application of state law and the absence of federal issues weighs "heavily in favor of abstention"); Nat'l Union Fire Ins. Co., 2001 WL 194903, at *3 ("Significantly, this case does not present a question of federal law."); Reliance Ins. Co. of Illinois v. Multi-Fin. Sec. Corp., No. 94-CV-6971 (SS), 1996 WL 61763, at *3 (S.D.N.Y. Feb. 13, 1996) ("Tipping heavily in favor of abstention in this case ... is the fact that state law will govern the outcome of this action.").

According, for all the reasons stated herein, in the alternative, GZA respectfully requests that the Court issue a stay of all against it pursuant to the Wilton/Brillhart Abstention Doctrine

13

## **CONCLUSION**

For the foregoing reasons, Defendant GZA GeoEnvironmental, Inc. respectfully requests that this Court enter an Order (i) dismissing pursuant to Fed. R. Civ. P. 12(b)(1), Plaintiff's claims against GZA as the Court lacks subject matter jurisdiction; (ii) in the alternative, staying the proceeding against GZA pursuant to the Wilton/Brillhart Abstention doctrine; and (iii) and for such other relief and the Court deems just and proper.

Dated:  New York, New York
         December 9, 2024

                                              **MANNING GROSS + MASSENBURG LLP**

                                              By:  /s/
                                                     Scott K. Winikow
                                                     Joshua S. Stern
                                            *Attorneys for Defendant*
                                            ***GOLDBERG-ZOINO ASSOCIATES OF NEW YORK, P.C. i/s/h/a GZA EOENVIRONMENTAL, INC. a/k/a GOLDBERG ZOINO ASSOCIATES OF NEW YORK P.C..***
                                            112 West 34th Street, 18th Floor
                                            New York, New York 10120
                                            (212) 244-3333