UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATLIN INSURANCE COMPANY

                         Plaintiff,

                -against-

CHAMP CONSTRUCTION COMPANY,
AMERICAN EMPIRE INSURANCE
COMPANY, MERCHANTS MUTUAL
INSURANCE COMPANY, NAVIGATORS
SPECIALTY INSURANCE, AXIS
INSURANCE, NAVIGATORS INSURANCE
COMPANY, GZA GEOENVIRONMENTAL,
INC., also known as GOLDBERG ZOINO
ASSOCIATES OF NEW YORK P.C.,
COMMERCE & INDUSTRY INSURANCE,
ACE AMERICAN INSURANCE
COMPANY, GILSANZ, MURRAY,
STEFICEK, LLP, CONTINENTAL
CASUALTY COMPANY, JOHN DOES 1-10
(said persons being unknown and fictitious)
and ABC COMPANIES 1-10 (said entities
being unknown and fictitious),

                        Defendants.

Case No.: 1:24-cv-04499-LJL

--------------------------------------------------------

**DEFENDANT GILSANZ, MURRAY, STEFICEK, LLP'S REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF ITS MOTION TO DISMISS**

 

**ZETLIN & DE CHIARA LLP**
801 Second Avenue
New York, New York 10017
(212) 682-6800
*Attorneys for Defendant
Gilsanz, Murray, Steficek, LLP*

Of Counsel:
Michael J. Vardaro, Esq.
Roy H. Schwartz, Esq.

## TABLE OF CONTENTS

Table of Authorities……………………………………………………….…………………ii

Preliminary Statement………………………………………………………………….…1

Legal Argument……………………………………………………………...………2

    I.     Catlin Concedes There Is No Duty to Defend, and Catlin Concedes There Is No
Ripe Indemnification (Or Hold Harmless) Claim.  Further, Indemnity Is Already
Being Litigated In The Underlying Action.  Accordingly, There Is No Basis To
Keep GMS a Party…………………………………………………………...2

        A.  Catlin Has Conceded There Is No Basis For Its
Federal Lawsuit As To GMS…………………………………………………….2

        B.  There Is No Legal Basis For Keeping GMS In This Case, Even as a
Purported Interested Party…………………………………………….……3

        C.  Consistent With the Wilton-Brillhart Abstention Doctrine, the Federal Court
Should Defer to the State Court Action…………………………………5

    II.    Catlin Cannot Ignore the Forum Selection Clause…………………..…………7

    III.   If the Court Does Not Outright Dismiss GMS, then the Court Should
Stay this Federal Lawsuit (At Least as to GMS)…………………………8

Conclusion………………………………………………………………………...9

# **TABLE OF AUTHORITIES**

## **Caselaw**

Am. Empire. Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc.,
    2017 WL 4118390, at *6 (E.D.N.Y. 2017), report and recommendation adopted,
    No. 16-CV-1541, 2017 WL 4119266 (E.D.N.Y., Sept. 15, 2017)………..……………......8

Brillhart v. Excess Ins. Co. Am., 316 U.S. 491, 494-95 (1942)………………………...…..5-6

Caldwell Manufacturing Co. v. Unique Balancing Co.,
    18 F.R.D. 258, 264, fn 22 (S.D.N.Y. 1955)………………………………………………..4

Certain Underwriters Lloyd's London v. St. Joe Mins. Corp.,
    90 F.3d 671, 676 (2d Cir. 1996) ……………………………………………………………..3

E.R. Squibb & Sons, Inc. v. Lloyd's & Companies, 241 F.3d 154, 177 (2nd Cir. 2001)………....7

Federal Ins. Co. v. M/V Ville D'Aquarius,
    2009 WL 3398266 at *4 (S.D.N.Y., Oct. 20, 2009)……………………………………..7,8

FSP, Inc. v. Societe Generale, 2003 WL 124515, at *4 (S.D.N.Y. 2003)……………...……….8

Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.,
    128 A.D.3d 425, 426 (N.Y. App. Div. 1st Dep't 2015)………………………………...….8

Tamplenizza v. Josephtal & Co., Inc., 32 F.Supp.2d 702, 704 (S.D.N.Y. 1999)…………...….....5

Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995)……………………………….…………..5,6

## **Statutes/Rules**

Federal Rule of Civil Procedure 12(b)(1)……………………………………………...……..9

Federal Rule of Civil Procedure 12(b)(6)………………………………………………………9

Committee Notes to Federal Rule of Civil Procedure 57………………………………...……….3

## PRELIMINARY STATEMENT[1]

Defendant Gilsanz, Murray, Steficek, LLP ("GMS") respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss the Amended Complaint for Declaratory Relief's claims against it, specifically Count 5.

Plaintiff Catlin Insurance Company ("Plaintiff" or "Catlin") concedes to GMS's positions on the most-important issues. Contrary to the Amended Complaint, Catlin now agrees that GMS has no duty to defend. Given Catlin's concession that there is no duty to defend, the only possible cause of action is indemnification or to hold harmless. However, Catlin now agrees that any indemnification or hold harmless obligations are not triggered until there first is a finding of "negligence" on GMS's part, and that negligence finding must occur in the underlying State Court action EMFT, LLC, et al. v. Broadway 371, LLC, et al., New York County Supreme Court index number 156959/2016 ("State Action" or "Underlying Action").

There is nothing left to litigate against GMS in this Federal lawsuit. Accordingly, the Court should dismiss GMS.

As an additional point, as the party seeking declaratory judgment, Catlin bears the burden of proving jurisdiction. GMS contracted with Catlin's insured Broadway 371, LLC such that all disputes would only be raised in New York County Supreme Court. In fact, Catlin's insureds are already pursuing indemnification claims against GMS in New York County Supreme Court through the Underlying Action. The entire premise of Catlin's lawsuit against GMS is GMS's alleged obligations within its June 2012 Structural Engineering Services Agreement (the

---

[1] The parties have revised their previously agreed-upon briefing schedule: (a) GMS was obligated to file its motion papers by December 24, 2024; (b) by January 27, 2025, any opposition to the motions filed by GMS and GZA was due; and (c) by February 5, 2025, both GMS and GZA must file any reply papers.

"Engineering Agreement"), which Catlin's Amended Complaint repeatedly references and even quotes. Catlin cannot base its entire Federal lawsuit upon certain Engineering Agreement provisions while simultaneously arguing that other Engineering Agreement provisions (such as a forum selection clause) somehow do not apply. Accordingly, the proper jurisdiction is State Court, where the relevant claims are already being litigated.

## LEGAL ARGUMENT

I.  **Catlin Concedes There Is No Duty to Defend, and Catlin Concedes There Is No Ripe Indemnification (or Hold Harmless) Claim. Further, Indemnity Is Already Being Litigated In the Underlying Action. Accordingly, There Is No Basis to Keep GMS a Party**

A.  ***Catlin Has Conceded There Is No Basis For Its Federal Lawsuit as to GMS***

The only allegations against GMS are contained in the Amended Complaint's Count V ("Declaration that Gilsanz must defend the Underlying Defendants"). Count V alleges that, pursuant to GMS's Engineering Agreement, GMS has an obligation to "indemnify, defend, and hold harmless the Underlying Defendants in the Underlying Action."

Catlin's Opposition Brief (page 3) now acknowledges that GMS does not have an obligation to defend. The "duty to defend" allegation should be dismissed with prejudice.

Catlin's Opposition Brief (page 3) also now acknowledges that GMS does not have a duty to indemnify or hold harmless unless there first is a finding that GMS negligently performed its services, and that finding must <u>first</u> occur in the Underlying Action.

> Catlin does not dispute that the language of the GMS Agreement. including that per the Agreement, GMS does not have an obligation to defend Broadway 371 and the related entities, and there must be a finding GMS negligently performed its services in order to trigger GMS's contractual obligation to indemnify and hold harmless Broadway 371 and related entities in <u>EMFT, LLC, et al. v. Broadway 371, LLC, et al.,</u> Index No. 156959/2016 (the

2

"Underlying Action"), but no such determination has been made as yet.

[Document 125, Catlin's Opposition Memorandum of Law, page 3.]

If the Court does not dismiss the indemnity/hold harmless clams with prejudice (on account of the relevant issues already being litigated in the Underlying Action), then the Court should dismiss the indemnity/hold harmless claims without prejudice.  A dismissal of the complaint without prejudice is the correct disposition of a declaratory judgment action that is not justiciable and a ripe controversy, because the Court's decision depends upon facts which have yet to be decided. Certain Underwriters Lloyd's London v. St. Joe Mins. Corp., 90 F.3d 671, 676 (2d Cir. 1996) ("the case alleged is not currently a justiciable and ripe controversy . . . dismissal of the complaint without prejudice is the correct disposition of the action").

Accordingly, GMS should be dismissed from this lawsuit.


B.    ***There Is No Legal Basis For Keeping GMS In This Case, Even as a Purported Interested Party***

In its footnote 1, Catlin states it is "willing to amend the Complaint to name GMS as an interested party should the Court find it necessary."  Catlin's only legal support is the Advisory Committee Notes to Federal Rule of Civil Procedure 57, which partially states (amongst other notes) that "The petitioner must have a practical interest in the declaration sought and all parties having an interest in therein or adversely affected must be made parties or be cited."

Catlin cites no other supportive legal authority, such as explanatory or analogous cases. Catlin proffers no support for what "having an interest in therein" actually means in this context.

Despite searching, GMS has not found cases providing a substantive discussion on what "having an interest in therein" means in the context of Rule 57, much less in the context of an

insurance company's declaratory lawsuit for defense, indemnity, or to hold harmless.  Although not directly on point, Caldwell Manufacturing Co. v. Unique Balancing Co., 18 F.R.D. 258, 264, fn 22 (S.D.N.Y. 1955) at least provides some context.  In Caldwell, the District Court held that, due to a licensor-patentee's absence from a patent right dispute, the subject declaratory judgment action must fail because the patent's validity could not be adjudicated given the licensor-patentee's "substantial" interest owing to the licensee-patentee's retaining the right to defend that patent.  In that context, the absent licensor-patentee's involvement was critical for adjudicating patent rights.

In our case, GMS does not have an interest in this Federal lawsuit, and it will not be adversely affected.[2]  GMS does not have anything at stake regardless of how the Federal Court ultimately rules on the lawsuit's merits.  Catlin already conceded there is no duty to defend.  Catlin has conceded that "there must be a finding GMS negligently performed its services in order to trigger GMS's contractual obligation to indemnify and hold harmless Broadway 371 and related entities in [the Underlying Action]."  The indemnification claims are already being litigated in the Underlying Action.  There is nothing remaining in this Federal lawsuit commanding GMS's involvement.  And, regardless of how the Federal Court ultimately rules on Catlin's claims against the other parties, GMS would not be adversely affected.

Contrary to Catlin's argument, Catlin's decision to sue GMS's insurer Continental Casualty Company ("Continental") does not somehow mean that GMS has an "interest" that justifies GMS's continued involvement.  As a practical matter, Continental will likely also be dismissed from this Federal lawsuit, assuming Continental shares GMS's basis for this Motion to Dismiss.  Further, for argument's sake, if GMS was found both "negligent" and liable for

---

[2] Catlin's Opposition Memorandum does not claim GMS will be "adversely affected"; rather, Catlin only claims GMS has an "interest."

"indemnification" in the Underlying Action, then there is no remaining claim to litigate in the Federal action.  GMS cannot be held liable twice, in two different venues, for the same cause of action.  And, if GMS's claims are resolved in the Underlying Action, there is no basis for claims to continue against Continental in the Federal action.  In short, Catlin's decision to sue Continental does not somehow compel GMS to remain involved in this lawsuit.

Because GMS does not have an interest and will not be adversely affected, there is no basis for GMS to somehow exist as a de facto party. And, to the extent that Catlin believes it is important for GMS to be advised that this Federal lawsuit exists so that GMS can ascertain if its participation is warranted, GMS obviously has notice of this lawsuit.

There is no basis for GMS to continue spending resources on this Federal lawsuit, and it should be dismissed.[3]

**C.      Consistent With the <u>Wilton-Brillhart</u> Abstention Doctrine, the Federal Court Should <u>Defer to the State Court Action</u>**

Courts have discretion to determine whether and when to entertain a declaratory judgment lawsuit even if the lawsuit did satisfy subject matter jurisdiction requirements.  <u>Tamplenizza v. Josephtal & Co., Inc.</u>, 32 F.Supp.2d 702, 704 (S.D.N.Y. 1999) (Judge M. Pollack).

The indemnification claim itself is already being litigated in the Underlying Action. Consistent with the <u>Wilton-Brillhart</u> abstention doctrine, the Federal Court should defer to that longstanding, State lawsuit.  GMS's underlying Memorandum recited the factors that Southern District Courts apply based upon <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 282 (1995) and <u>Brillhart</u>

---

[3] To the extent anyone truly believes it is important to obtain discovery from GMS, those parties can always issue (and provide compensation for) a non-party subpoena.

v. Excess Ins. Co. Am., 316 U.S. 491, 494-95 (1942).  GMS applied the numerous factors, proving

the Federal Court should defer to the State Court's concurrent litigation.

Catlin's Opposition does not contest GMS's application of the abstention factors aside

from raising that neither Catlin nor Continental are parties to the Underlying Action and that

therefore Catlin's claims were not presented in the Underlying Action.  The argument is baseless.

Catlin is the insurer for the Underlying Defendants.[4]  As made very clear in Catlin's Amended

Complaint (for example, at paragraphs 65 and 66), the entire basis for Catlin's lawsuit is GMS's

alleged failure to indemnify, defend, and hold harmless "the Underlying Defendants in the

Underlying Action."  All of Catlin's Federal lawsuit claims against GMS are derived from the

Underlying Action.   Accordingly, the parties and claims are tantamount to being identical.

Catlin argues the Underlying Action will not resolve Catlin's claim for reimbursement of

defense costs and fees from GMS.  However, according to the Engineering Agreement's section

8.1, GMS's indemnification obligation includes indemnifying and holding harmless the Owner

(and related companies) from reasonable attorneys' fees and legal costs, disbursements, and

expenses. (Document 108-2, Structural Engineering Agreement, PDF page 25.)  In other words,

the Underlying Defendants' lawsuit against GMS for indemnification already includes those

damages.  If found liable for indemnification, GMS obviously is not going to pay out damages

twice, once to Catlin and once to Catlin's insureds.

In sum, regarding the few Wilton-Brillhart factors that Catlin takes issue with, the claims

are the same; the damages are the same; and (because insurer Catlin is stepping into its insureds'

---

[4] Consistent with the Amended Complaint, "Underlying Defendants" refers to Broadway 371 LLC,
Elad Group Properties LLC, and the Board of Directors of the Franklin Place Condominium.

shoes), the parties are essentially the same. The <u>Wilton-Brillhart</u> factors have been satisfied, and the Federal Court should defer to the State Court.

II.    **Catlin Cannot Ignore the Forum Selection Clause**

"A party seeking a declaratory judgment bears the burden of proving that the district court has jurisdiction." <u>E.R. Squibb & Sons, Inc. v. Lloyd's & Companies</u>, 241 F.3d 154, 177 (2nd Cir. 2001). Catlin bears the burden of proving its jurisdiction over GMS.

GMS's Engineering Agreement provides, at section 15.2.1 within the "Governing Law and Disputes" section, that:

> All disputes arising hereunder, unless resolved by mutual agreement by the parties, shall be resolved by the **Supreme Court of the State of New York located in the County of New York.**
>
> [(Doc. 109, Schwartz Decl., Exhibit A, at section 15.2.1, PDF page 31) (emphasis added).]

Catlin's only response appears within its Preliminary Statement wherein Catlin asserts that it is not bound by its insured's contractual venue selection because Catlin itself did not sign the Engineering Agreement. Catlin cites no legal authority for why it is not bound.

The entire basis of Catlin's lawsuit against GMS is the Engineering Agreement. Catlin's Amended Complaint discusses (and quotes from) the Engineering Agreement in paragraphs 29, 30, 31, 32, 46, 65, and 66. Catlin cites no basis other than the Engineering Agreement for its lawsuit against GMS.

The Amended Complaint, for example at paragraphs 65 and 66, alleges that GMS failed to comply with contractual obligations to defend, indemnify, or hold harmless Catlin's insureds, the Underlying Defendants. Catlin is stepping into its insureds' shoes to prosecute its insureds' contractual rights. Accordingly, Catlin is also bound by the forum selection clause. <u>See, e.g.,</u>

7

Federal Ins. Co. v. M/V Ville D'Aquarius, 2009 WL 3398266 at *4 (S.D.N.Y., Oct. 20, 2009) (District Judge P.K. Castel) (holding, in analogous context of bill of lading, a plaintiff insurer suing pursuant to certain bill of lading terms has also been deemed to accept "the forum selection clause contained therein" due to the insurer's overall reliance on that bill of lading within its Complaint).

### III.    If the Court Does Not Outright Dismiss GMS, then the Court Should Stay This Federal Lawsuit (At Least As To GMS)

The Court should dismiss GMS.  However, if GMS somehow remains, the Court should stay all claims as to GMS.  Indemnification obligations are commonly not ripe for adjudication until liability has been imposed upon the party to be indemnified.  FSP, Inc. v. Societe Generale, 2003 WL 124515, at *4 (S.D.N.Y. 2003); Am. Empire. Surplus Lines Ins. Co. v. EM & EM Chimney & Masonry Repair, Inc., 2017 WL 4118390, at *6 (E.D.N.Y. 2017) ("claims concerning indemnification obligations are not ripe for adjudication until liability has been imposed upon the party to be indemnified"), report and recommendation adopted, No. 16-CV-1541, 2017 WL 4119266 (E.D.N.Y., Sept. 15, 2017).  Thus, when there is no finding of fact that a party is liable, any order requiring a party to indemnify is premature.  Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp., 128 A.D.3d 425, 426 (N.Y. App. Div. 1st Dep't 2015) ("No finding has yet been made as to [the subcontractor's] negligence, and thus no determination can yet be made as to its obligation to indemnify.").

As Catlin's Opposition memorandum acknowledges, there has been no adjudication of liability against GMS in the Underlying Action.  That adjudication is required before the Federal Court rules on matters relevant to GMS.  Otherwise, any Federal Court decision is of a hypothetical, advisory nature.

## CONCLUSION

For the reasons stated above and in the underlying Memorandum, GMS respectfully requests that the Court dismiss all claims against it, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). If the Court does not dismiss all claims against GMS, then GMS requests that the Court enter an Order staying all proceedings in this matter as to GMS. GMS further requests such other relief as this Court deems proper.

Dated: New York, New York
      February 4, 2025

**ZETLIN & DE CHIARA LLP**

By: _____
Michael J. Vardaro
Roy H. Schwartz
801 Second Ave, 16th Floor
New York, New York 10017
(212) 682-6800
*Attorneys for Defendant*
*Gilsanz, Murray, Steficek LLP*