UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CATLIN INSURANCE COMPANY

                Plaintiff,

      -against-

CHAMP CONSTRUCTION COMPANY, AMERICAN EMPIRE INSURANCE COMPANY, MERCHANTS MUTUAL INSURANCE COMPANY, NAVIGATORS SPECIALTY INSURANCE, AXIS INSURANCE, NAVIGATORS INSURANCE COMPANY, GZA GEOENVIRONMENTAL, INC., also known as GOLDBERG ZOINO ASSOCIATES OF NEW YORK P.C., COMMERCE & INDUSTRY INSURANCE, ACE AMERICAN INSURANCE COMPANY, GILSANZ, MURRAY, STEFICEK, LLP, CONTINENTAL CASUALTY COMPANY, JOHN DOES 1-10 (said persons being unknown and fictitious) and ABC COMPANIES 1-10 (said entities being unknown and fictitious),

                Defendants.
-----------------------------------------------------------

Case No.: 1:24-cv-04499-LJL

**DEFENDANT GILSANZ, MURRAY, STEFICEK, LLP'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF CATLIN INSURANCE COMPANY'S CROSS-MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

On the Brief:
Michael J. Vardaro, Esq.
Roy H. Schwartz, Esq.

**ZETLIN & DE CHIARA LLP**
801 Second Avenue
New York, New York 10017
(212) 682-6800
rschwartz@zdlaw.com
*Attorneys for Defendant
Gilsanz, Murray, Steficek, LLP*

**TABLE OF CONTENTS**

Table of Authorities……………………………………………………….……………………ii

Preliminary Statement…………………………………………………………………….……1

Legal Argument………………………………….………………………………...………3

    I.      Catlin Missed the Deadline For Moving to Further Amend Its Complaint, and Has Made No Attempt to Demonstrate "Good Cause"………………….…3

    II.     Catlin Has Already Conceded There Is No Duty to Defend, and Catlin Has Already Conceded There Is No Ripe Indemnification (or Hold Harmless) Claim. Further, Indemnity Is Already Being Litigated in the Underlying, State Action. Accordingly, GMS Has No Interest in this Federal Lawsuit and Is Not a Purported "Interested Party"……………………………………………………………….4

        A. Catlin Already Conceded There Is No Basis For Its Federal Lawsuit as to GMS……………………………………………………………....4

        B. In Addition to Catlin's Concessions, Catlin's Federal Lawsuit Must Be Dismissed Due to the Parties' Forum Selection Clause as Well as the <u>Wilton-Brillhart</u> Abstention Doctrine………………………………………...………..5

        C. There Is No Legal Basis For Keeping GMS In This Case as a Purported "Interested Party"……………………………………………………..…….6

Conclusion……………………………………………………………………………………...9

# **TABLE OF AUTHORITIES**

**Caselaw**

Brillhart v. Excess Ins. Co. Am., 316 U.S. 491, 494-95 (1942)……………………….....……5-6

Caldwell Manufacturing Co. v. Unique Balancing Co.,
    18 F.R.D. 258, 264, fn 22 (S.D.N.Y. 1955)……………………………………………..7

In Re Turquoise Hill Resources Ltd Securities Litigation,
    2024 WL 791545 (S.D.N.Y., Feb. 26, 2024) (L. Liman, U.S.D.J.)………………………..3

Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995)……………………………….………….5-6

**Statutes/Rules**

Federal Rule of Civil Procedure 16(b)….…………………………………………………………3

Committee Notes to Federal Rule of Civil Procedure 57………………………………....……….7

## PRELIMINARY STATEMENT[1]

The Court should grant the still-undecided Motion to Dismiss filed by Gilsanz Murray Steficek LLP ("GMS") and, also, deny the motion for leave to file a Second Amended Complaint filed by Catlin Insurance Company ("Catlin") insofar as its new allegation against GMS.

Ace Property and Casualty Insurance Company ("ACE") filed a Motion to Dismiss certain claims of plaintiff Catlin. In response, Catlin filed a Cross-Motion for leave to file a Second Amended Complaint. Although ACE's dispositive motion has nothing to do with GMS, Catlin's intended Cross-Motion would raise a new allegation against GMS. More specifically, Catlin's proposed Second Amended Complaint, at paragraph 16, would now allege: "At a minimum, [GMS] is named as an interested party." Catlin's motion papers provide no legal support for Catlin's "interested party" claim against GMS. Catlin's only reference whatsoever to its position is contained within its Memorandum of Law's footnote 1, where Catlin merely states that it intends to add the "interested party" allegation in reference to arguments it previously made in partial-opposition to GMS's previously-filed – and still undecided – Motion to Dismiss.

Catlin's deadline for moving to further amend its Complaint passed back on January 13, 2025, almost three months before Catlin filed its Cross-Motion. Catlin's Cross-Motion does not acknowledge the missed deadline, and Catlin has not attempted demonstrating the requisite "good cause." Catlin ignores its burden for filing a late motion contrary to a Court-ordered deadline.

Putting aside that Catlin missed its deadline and failed to demonstrate good cause, there simply is no basis for Catlin to now plead that GMS is an interested party. GMS has no place in this lawsuit. GMS already moved for dismissal. GMS's Motion to Dismiss is materially

---

[1] Per GMS's April 14, 2025 letter motion – which the Court granted – GMS's opposition papers are due on April 25, 2025. Doc. 150.

1

uncontested, save for Catlin's position that GMS should somehow remain entangled in this lawsuit as a purported interested party. As GMS previously argued in its Motion to Dismiss, the very issues that Catlin raises in this Federal, declaratory judgment lawsuit are <u>already</u> being litigated in the underlying, State Court action. GMS obviously cannot be forced to litigate the same issues simultaneously in two different venues. Further, as GMS argued in its Motion to Dismiss, GMS's contract requires that its dispute be resolved in State Court, not Federal Court. After GMS moved for dismissal, Catlin apparently recognized that its lawsuit against GMS lacked merit and, therefore, invented this "interested party" argument to attempt justifying GMS being shoehorned into this Federal lawsuit.

     Catlin's attempts should not be rewarded. Putting aside that Catlin has cited no legal support or factual support for its position, and putting aside that Catlin's proposed Second Amended Complaint raises no allegations that put GMS on notice of how it supposedly is an interested party, the reality is that GMS is not an interested party. GMS has no stake whatsoever in this Federal declaratory lawsuit. GMS's rights are already being adjudicated in the underlying, State Court lawsuit. Nothing that happens in this Federal lawsuit will impact GMS.

     Catlin's desire to somehow keep GMS entangled in this Federal lawsuit is also patently unfair and inequitable. GMS is already defending the same claims in State Court, where GMS has been forced to spend resources on its defense. Catlin's efforts force GMS to unfairly spend even more resources engaged in a Federal lawsuit that it has no interest in.

     Finally, GMS's arguments herein overlap with arguments made within GMS's Motion to Dismiss ([Doc. 109](#)) and GMS's Reply ([Doc. 128](#)). GMS's opposition herein incorporates several of the same points in order to oppose Catlin's motion for leave to file a Second Amended Complaint.

**LEGAL ARGUMENT**

I.  **Catlin Missed the Deadline For Moving to Further Amend Its Complaint, and Has Made No Attempt to Demonstrate "Good Cause."**

Catlin's Court-ordered deadline for moving to amend its Complaint was January 13, 2025, nearly three months before Catlin's April 11, 2025 Cross-Motion. Doc. 106 ¶ 4; Doc. 146 ¶ 4.

Catlin's Cross-Motion makes no reference to the missed deadline, and it offers no explanation for the late Cross-Motion. Catlin makes no effort to demonstrate "good cause" for its requested amendment as to GMS.

In In Re Turquoise Hill Resources Ltd Securities Litigation, 2024 WL 791545 (S.D.N.Y., Feb. 26, 2024) (L. Liman, U.S.D.J.), Judge Liman discussed the consequences of missing a Court-ordered deadline for amending pleadings. As set forth in Judge Liman's opinion, when a party moves to amend after the deadline set forth in a case management plan and scheduling order, then Federal Rule of Civil Procedure 16(b) governs, and the movant must demonstrate "good cause" in order to amend the pleadings. Id. at *2. Per Judge Liman's opinion, a scheduling order is "entitled to respect." Ibid. In order to demonstrate good cause, the movant must demonstrate its pre-motion diligence in order to prove that, despite the movant's efforts, the amendment deadline could not have been reasonably met. Ibid. Good cause does not exist where the proposed amendment rests on information that the movant should have known prior to missing the deadline. Ibid. Courts may also consider other factors such as prejudice. Ibid.

Here, Catlin's failure to address the requisite "good cause" standard is fatal to its Cross-Motion.

**II.     Catlin Has Already Conceded There Is No Duty to Defend, and Catlin Has Already Conceded There Is No Ripe Indemnification (or Hold Harmless) Claim. Further, Indemnity Is Already Being Litigated In the Underlying, State Action.  Accordingly, GMS Has No Interest in this Federal Lawsuit and Is Not a Purported "Interested Party."**

**A.     *Catlin Already Conceded There Is No Basis For Its Federal Lawsuit as to GMS.***

Catlin's only allegations against GMS are contained in Catlin's Amended Complaint's Count V ("Declaration that Gilsanz must defend the Underlying Defendants").  Count V alleges that, pursuant to GMS's Structural Engineering Agreement,[2] GMS has an obligation to "indemnify, defend, and hold harmless the Underlying Defendants in the Underlying Action." Doc. 23.

Catlin has already made the concessions necessary for the Court to dismiss GMS from this lawsuit.  In response to GMS's Motion to Dismiss, Catlin filed an opposition legal memorandum (Doc. 125).  As previously briefed in GMS's Reply Brief in furtherance of GMS's Motion to Dismiss (Doc. 128), Catlin's opposition legal memorandum (page 3) acknowledges that GMS does not have an obligation to defend.  Catlin's opposition legal memorandum (page 3) also acknowledged that GMS does not have a duty to indemnify or hold harmless unless there first is a finding that GMS negligently performed its services, and Catlin agreed that finding must first occur in the underlying, State Court action EMFT, LLC, et. al. v. Broadway 371, LLC, et al., New York Supreme Court index 156959/2016 (the "State Action").

---

[2] A copy of the Structural Engineering Agreement was previously filed in conjunction with GMS's Motion to Dismiss.  Doc. 108-2.

4

> **B.    In Addition to Catlin's Concessions, Catlin's Federal Lawsuit Must Be Dismissed Due to the Parties' Forum Selection Clause as Well as the <u>Wilton-Brillhart Abstention Doctrine.</u>**

Putting aside the concessions that Catlin has already made, there are additional grounds requiring dismissal of Catlin's lawsuit against GMS.

As also argued previously within GMS's Reply Brief (Doc. 128), the Federal Court lacks jurisdiction over the allegations against GMS. GMS's Structural Engineering Agreement provides, at section 15.2.1 within the "Governing Law and Disputes" section, that:

> All disputes arising hereunder, unless resolved by mutual agreement by the parties, shall be resolved by the **Supreme Court of the State of New York located in the County of New York.**

[(Doc. 108-2, at section 15.2.1, PDF page 31) (emphasis added).]

Catlin is bound by that forum selection clause. The entire basis of Catlin's lawsuit against GMS is the Structural Engineering Agreement. Catlin's Amended Complaint discusses (and quotes from) the Structural Engineering Agreement in paragraphs 29, 30, 31, 32, 46, 65, and 66. Catlin cites no basis other than the Structural Engineering Agreement for its lawsuit against GMS. As Catlin's Amended Complaint makes quite clear at paragraphs 65 and 66, Catlin's lawsuit against GMS is premised upon Catlin stepping into its insured's shoes in order to pursue rights allegedly available under the Structural Engineering Agreement. In short, the Federal Court has no jurisdiction over GMS regarding Catlin's claims.

Even assuming the Federal Court had jurisdiction, the reality is that the indemnification claim is already being litigated in the underlying, State Action. As already argued in GMS's Motion to Dismiss Memorandum of Law (Doc. 109) and GMS's Reply Brief (Doc. 128), Catlin's insureds already sued GMS for indemnification, and that allegation is being litigated in the underlying, State Action. Doc. 108-5 at PDF pages 59, 61-62, 65, 67-68. Consistent with the

5

Wilton-Brillhart abstention doctrine, the Federal Court should defer to that longstanding, State lawsuit. GMS's Motion to Dismiss legal memoranda addressed the factors that Southern District Courts apply based upon Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995) and Brillhart v. Excess Ins. Co. Am., 316 U.S. 491, 494-95 (1942). Within its Motion to Dismiss memoranda, GMS proved the Federal Court should defer to the State Court's concurrent litigation. Importantly, and as already argued in GMS's Reply Brief (Doc. 128), Catlin presented no serious opposition to GMS's application of the Wilton-Brillhart abstention doctrine.

In sum, there is no basis for Catlin's lawsuit against GMS. More importantly, for purposes of addressing Catlin's Cross-Motion for leave to file a Second Amended Complaint, these points about why GMS is entitled to dispositive relief demonstrate that GMS has nothing at stake and is not an "interested party" to this Federal lawsuit.

### C. There Is No Legal Basis For Keeping GMS In This Case as a Purported "Interested Party"

Given Catlin's concessions, along with the reality that Catlin's claims should be dismissed under both the forum selection clause and the Wilton-Brilhart abstention doctrine, there is nothing left to litigate regarding GMS in this Federal lawsuit.

In a last-ditch effort to keep GMS entangled in this Federal lawsuit, Catlin has belatedly taken the position that GMS is somehow an "interested party." Catlin's Cross-Motion does not cite any legal authority for its position. Catlin's Cross-Motion also proffers no supportive facts. Catlin's proffered Second Amended Complaint also alleges no supportive allegations that would put GMS on notice as to why it supposedly is an "interested party."

Catlin's position is set forth in footnote 1 to its Cross-Motion's legal memorandum (Doc. 147-1, PDF 8). Footnote 1 says nothing of substance, other than to cross-reference that Catlin

6

previously raised the prospect of GMS being an "interested party" within Catlin's opposition brief (to GMS's motion to dismiss) (Doc. 125).

However, even Catlin's cross-referenced opposition brief (Doc. 125) proffers little of substance regarding this "interested party" argument, which appears to be a "Hail Mary" argument. Catlin's only support is the Advisory Committee Notes to Federal Rule of Civil Procedure 57; Catlin relies only on the Note that "The petitioner must have a practical interest in the declaration sought and all parties having an interest therein or adversely affected must be made parties or be cited." Catlin has cited no other supportive authority such as explanatory or analogous cases. Catlin has proffered no legal support for what "having an interest in therein" actually means in this context.

As GMS already addressed in its Reply Brief (in support of its Motion to Dismiss) (Doc. 128), GMS was unable to find cases providing a substantive discussion on what "having an interest in therein" means in the context of Rule 57 and an insurance company's declaratory lawsuit for defense, indemnity, or to hold harmless. However, GMS also pointed out that one of the few, somewhat relative cases it could locate is Caldwell Manufacturing Co. v. Unique Balancing Co., 18 F.R.D. 258, 264, fn 22 (S.D.N.Y. 1955), which at least provides some context for an interested party. In Caldwell, the District Court held that a declaratory judgment action concerning a patent right dispute must fail because "the interest of the absent licensor-patentee is substantial; it has specifically retained the right to defend the patent in issue." In other words, the missing party was critical to, or at least had a substantial interest in, how declaratory relief concerning the patent rights would be resolved.

7

GMS does not have an interest in this Federal lawsuit, and it will not be adversely affected.[3] GMS does not have anything at stake regardless of how the Federal Court ultimately rules on the lawsuit's merits. Catlin already conceded there is no duty to defend. The indemnification claims are already being litigated in the underlying Action. For argument's sake, if GMS was found both "negligent" and liable for "indemnification" in the underlying, State Action, then there is no remaining claim to litigate in the Federal action. GMS cannot be held liable twice, in two different venues, for the same cause of action.

Further, entrapping GMS in this Federal lawsuit is contrary to the intent of the Structural Engineering Agreement's forum selection clause, whereby disputes arising between GMS and Catlin's insured were contractually-bound to be litigated in New York Supreme Court. Doc. 108-2, at section 15.2.1, PDF page 31. The Structural Engineering Agreement's forum selection clause was intended to relegate issues to New York Supreme Court, and not to allow for some bizarre scenario where GMS finds itself entangled in litigation costs in both the State and Federal Courts regarding duplicative issues merely because the owner's insurer arbitrarily labels GMS as an interested party.

There is nothing remaining in this Federal lawsuit commanding GMS's involvement. And, regardless of how the Federal Court ultimately rules on Catlin's declaratory claims against the other parties, GMS would not be adversely affected.

Because GMS does not have an interest and will not be adversely affected, there is no basis for GMS to somehow exist as a *de facto* party. And, to the extent that Catlin believes it is important

---

[3] Nowhere in any of Catlin's papers – neither in its Cross-Motion for leave to file a Second Amended Complaint nor in Catlin's proposed Second Amended Complaint – does Catlin claim GMS will be "adversely affected." Rather, Catlin only claims GMS has an "interest."

8

for GMS to be advised that this Federal lawsuit exists so that GMS can ascertain if its participation is warranted, GMS obviously has notice of this Federal lawsuit.

Finally, as a matter of common sense (and public policy), GMS should not be forced into a position where it needs to continue devoting resources into participating in this Federal litigation. GMS is already devoting resources to defending the underlying, State Action, which is the lawsuit where GMS actually has an interest. There is no basis for GMS to continue spending resources on this Federal lawsuit, and it should be dismissed.[4]

## CONCLUSION

Consistent with GMS's previously-filed (and largely uncontested) Motion to Dismiss, GMS reiterates that it should be dismissed entirely from this Federal lawsuit. Even if the Court grants GMS's Motion to Dismiss, the Court should also instruct that Catlin cannot further amend its pleadings to allege that GMS is somehow an "interested party."

Dated: New York, New York
April 25, 2025

By: ZETLIN & DE CHIARA LLP

Michael J. Vardaro
Roy H. Schwartz
801 Second Ave, 16th Floor
New York, New York 10017
(212) 682-6800
*Attorneys for Defendant*
*Gilsanz, Murray, Steficek LLP*

---

[4] To the extent anyone truly believes it is important to obtain discovery from GMS, those parties can always issue (and provide compensation for) a non-party subpoena.

9