

**METHFESSEL & WERBEL**
A Professional Corporation

JOEL N. WERBEL>
JOHN METHFESSEL, JR.>
FREDRIC PAUL GALLIN*+^
WILLIAM S. BLOOM>*
ERIC L. HARRISON*+
MATTHEW A. WERBEL>
LORI BROWN STERNBACK*+
I. BLAKELEY JOHNSTONE, III+*
GINA M. STANZIALE>
PAUL J. ENDLER JR.>
JAMES P. CULLEN, JR.=^
THOMAS O. MULVIHILL>
JAMES FOXEN^
SARAH K. DELAHANT+
ATHINA L. CORNELL+
JEFFREY R. MERLINO+
JENNIFER A. OSBORNE+
ANDREW J. GIBBS>
JARED S. SCHURE>

Of Counsel
STEPHEN R. KATZMAN#
ED THORNTON>
MICHAEL TRIFIOLIS>
BETH A. BOLGER+
PAUL E. GRIGGS>

Counsel
ADAM M. CARMAN+^
SHAJI M. EAPEN+
JOSEPH C. FALK>
ANGELA M. GURRERA>
GERALD KAPLAN>
JARED P. KINGSLEY*+
JOHN R. KNODEL*+
LESLIE A. KOCH=
CHARLES T. MCCOOK, JR.*>
CHRISTINA MICHELSON+
RICHARD A. NELKE~
STEVEN K. PARNESS+
RAINA M. PITTS^
AMANDA J. SAWYER^
STEVEN A. UNTERBURGER+

Associates
EDWARD D. DEMBLING>
KARISHMA DHRUVE>
MICHAEL R. EATROFF>
ERICA FRANCISCO-LAU+
FRANK J. KEENAN+^
SCOTT KETTERER>
ZURAB MAISURADZE>
JOHN M. MARTIN>
ANTHONY J. MANCUSO>
KAJAL J. PATEL+
ADAM M. SCHWARTZ+
VITTORIA A. SCULCO>
SARAH E. SHEPP+
ALYCIA M. SWIFT+
TIFFANY D. TAGARELLI>

Retired
JOHN METHFESSEL, SR.>
 (1935-2017)
DON CROWLEY*+
 (1942-2024)
MARC DEMBLING*+
 (1944-2022)

*Certified by the Supreme Court of
 New Jersey as a Civil Trial Attorney
+Member of NY & NJ Bar
^Member of PA & NJ Bar
^Member of NY Bar only
>Member of NJ Bar only
#Member of NJ & LA. Bar
<Member of NJ & DC Bar
≤Member of NJ, NY & CA Bar
≥Member of NJ, PA & DC Bar
~Member of NY, NJ & DC Bar
=Member of NY, NJ & MA Bar
±Member of NY, NJ & FL Bar

**Please reply to New York**

July 16, 2025

<u>VIA ECF</u>
Honorable Lewis J. Liman, U.S.D.J.
United States District Court for the Southern District of New York
40 Foley Square
New York, NY 10007-1581

RE:     **CATLIN INSURANCE VS. CHAMP CONSTRUCTION, ET AL.**
        Our File No.     : 94407a SME
        Case No.         : 1:24-CV-4499

Dear Judge Liman:

This office represents Plaintiff Catlin Insurance Company ("Catlin"). During the July 14th oral argument on GZA's motion to dismiss, the Court permitted the parties to submit supplemental briefing discussing the logic behind certain New York courts' decisions that the obligation to defend is no broader than the obligation to indemnify among private, non-insurer parties, particularly when the contract has separate duties to defend and indemnify, not just when the duty to indemnify is for incurred defense costs and fees.

Unfortunately, despite researching the issue, we did not locate any case law explaining the logic behind the New York courts' decisions holding that the obligation to defend is no broader than the obligation to indemnify among private, non-insurer parties.

Nonetheless, based on the legal research conducted, it is Catlin's position that the Honorable Katherine Polk Failla, U.S.D.J.'s analysis in *Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 14 CIV. 7222 KPF, 2015 WL 4254033 (S.D.N.Y. July 14, 2015), offers perhaps the best synopsis of New York law on the contractual obligation to defend and indemnify within non-insurance contracts. In *Dresser-Rand*, Judge Failla stated, "If a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer." *Id.* at *7. After examining New York case law on the contractual duty to defend among non-insurer parties, Judge Failla concluded: "Under New York law, the "duty to defend" is presumed only in

Methfessel & Werbel, Esqs.
Our File No. 94407a SME
Page 2

insurance policies; the common law imposes no such duty on contractual indemnitors more generally. Accordingly, an indemnitor's obligation to defend must emanate (if at all) from the language of the contract." *Ibid.*

Based on this analysis, Judge Failla noted that Ingersoll Rand's promise to "indemnify [and] defend … Dresser–Rand … from … any and all … claims … relating to … Products Liabilities Losses", on its own, was "broad enough to trigger a defense obligation." *Id.* at *8. However, the provision did not stand alone and was "subject to" other limiting provisions within the Equity Purchase Agreement (the "EPA"). *Ibid.*

According to the EPA, Ingersoll Rand had no obligation to defend or indemnify Dresser–Rand if the underlying claims are based on "acts or omissions … [of Dresser–Rand] following the Closing". Ibid. Since the determination of the obligation to defend and indemnify was contingent upon the determination of whether Dresser–Rand's post-Closing acts or omissions are responsible for the subject losses, Judge Failla found that Ingersoll Rand's obligation to defend and indemnify Dresser-Rand had not ripen as yet. *Ibid.*

Applying Judge Failla's reasoning and analysis in *Dresser-Rand* to GZA's contract with Broadway 371 (a contract between two sophisticated business entities), GZA's promise to indemnify and defend Broadway 371 "from and against lawsuits, claims, causes of action . . . arising out of the performance of the services" by GZA was broad enough to trigger GZA's defense obligation. As noted in the papers and during Monday's oral argument, GZA's contract does not prescribe or limit GZA's obligation to defend Broadway 371 to a finding or determination of negligence or fault:

> **the Consultant shall** indemnify, **defend**, and hold harmless **the Owner and its parent company, corporations, subsidiary and affiliated companies. . .from and against lawsuits, claims, causes of action**, damages, losses, interest, . . . and expenses (including but not limited to reasonable attorney's fees and legal costs, disbursements and expenses), for. . .injury to or destruction of tangible property **arising out of the performance of the services by the Consultant under this Agreement**. . . .
> *See* Eapen Decl., Ex. A, 8.1 (emphasis added).

As noted in the papers and during the oral argument, GZA's services under the contract included "vibration monitoring", reviewing the available project documents to prepare a pile calculation for an "60 T design load, vertical mini pile for this project", and provide an engineer to oversee the pile operations. *See* Eapen Decl., Ex. A, CIC 000163-164. GZA also agreed to "observe and document

Methfessel & Werbel, Esqs.
Our File No. 94407a SME
Page 3

visible cracks, separations, spalling and evidence of water leakage." *Id.* at CIC 000163.

In the Underlying Action, EMFT retained StructureTech Engineering PC, which issued a Forensic Investigation Report wherein it concluded that:

> the observed cracks at floors and walls of the subcellar, cellar, and floors above are the result of foundation movement/settlement caused by the increase in the load applied from the adjacent new building to the north at 371 Broadway. . . . The settlement of the footing will continue slowly for a long period of time causing more cracks and wall tilting.
> *See* Eapen Decl., Exhibit B at page 4.

Given the allegations in the Underlying Action arise out of services performed by GZA including pile calculations for the load, overseeing the pile operations and the obligation to monitor for cracks, GZA's obligation to defend Broadway 371 emanates from the contract language.

Otherwise, if GZA does not have a duty to defend Broadway 371 based on the application of the allegations to the contract language, then GZA's obligation to defend Broadway 371 is illusory. Accordingly, GZA's Motion to dismiss Catlin's claims as premature must be denied and the Court should hold that GZA has an obligation to defend Broadway 371 in the Underlying Action.

Respectfully submitted,

**METHFESSEL & WERBEL, ESQS.**

Shaji M. Eapen
eapen@methwerb.com
Ext. 131

SME:kfh

cc: All Counsel of Record (VIA ECF)