UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
                                                :

CATLIN INSURANCE COMPANY,            :

                                  Plaintiff,        :

                                                :        24-cv-4499 (LJL)

          -v-                    :

                                                :      OPINION AND ORDER

CHAMP CONSTRUCTION COMPANY; AMERICAN  :
EMPIRE INSURANCE COMPANY; MERCHANTS   :
MUTUAL INSURANCE COMPANY; NAVIGATORS  :
SPECIALTY INSURANCE; AXIS INSURANCE;    :
NAVIGATORS INSURANCE COMPANY; GZA      :
GEOENVIRONMENTAL, INC., also known as     :
GOLDBERG ZOINO ASSOCIATES OF NEW YORK  :
P.C.; COMMERCE & INDUSTRY INSURANCE; ACE :
AMERICAN INSURANCE COMPANY; GILSANZ,   :
MURRAY, STEFICEK,LLP, CONTINENTAL      :
CASUALTY COMPANY; JOHN DOES 1-10; and ABC :
COMPANIES 1-10,                          :
                                Defendants.     :

                                                :
--------------------------------------------------------------------- :
                                              :
                                              X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__8/29/2025__

LEWIS J. LIMAN, United States District Judge:

       Defendant GZA GeoEnvironmental, Inc., also known as Goldberg Zoino Associates of New York PC ("GZA") moves, pursuant to Federal Rule of Civil Procedure 12(b)(1), to dismiss the Amended Complaint against it for lack of subject matter jurisdiction. Dkt. No. 101. Plaintiff Catlin Insurance ("Catlin" or "Plaintiff") opposes the motion. Dkt. No. 124. For the reasons that follow, GZA's motion to dismiss is DENIED, but GZA's request in the alternative to stay the case pending further developments in the underlying litigation is GRANTED.

## BACKGROUND

       For purposes of this motion, the Court assumes the truth of the allegations of the Amended Complaint, as supplemented by the documents incorporated by reference. The Court has

previously summarized the same allegations in adjudicating motions to dismiss by Gilsanz, Murray, Steficek LLP ("Gilsanz") and Ace American Insurance Company ("Ace"), and familiarity with the prior opinion is presumed. *See* Dkt. No. 177.

In this action, Catlin seeks a declaratory judgment with respect to the obligations of certain parties to defend or indemnify Catlin's insureds in connection with a lawsuit pending in New York State Supreme Court, New York County, captioned *EMFT, LLC, et al. v. Broadway 371, LLC, et al.*, Index No. 156959/2016 (the "Underlying Action"). Dkt. No. 23 ¶ 1.

The Underlying Action concerns construction of a new ground-up condominium building at 5 Franklin Place a/k/a 371 Broadway, New York, New York (the "Building"), and damage that is alleged to have been sustained as a result of that construction to the neighboring building at 365 Broadway, New York, New York (the "365 Building"). Dkt. No. 138-2.[1] On February 21, 2017, EMFT, LLC ("EMFT"), the owner of the 365 Building, filed a summons and complaint in New York State Supreme Court against Broadway 371, LLC ("Broadway 371"), ELAD Group Properties, LLC ("ELAD"), and the Board of Directors of Franklin Place Condominium (the "Board," and collectively with Broadway 371 and ELAD, the "Underlying Defendants") for damages arising from and/or relating to work performed at the Building, including but not limited to foundation work. Dkt. No. 23 ¶ 44. Broadway 371 is the owner of the Building. *Id.* ¶ 21. According to the allegations in the Underlying Action, ELAD is the managing member of the Building and the Board was established to own and control the Building. *Id.* ¶ 45; *see* Dkt. No. 138-2 ¶ 7.

---

[1] The Court takes judicial notice of the state-court verified complaint for its contents but not for the truth of the matters asserted in it. *See Johnson v. Pugh*, 2013 WL 3013661, at *2 (E.D.N.Y. June 18, 2013).

EMFT alleges three causes of action against the Underlying Defendants in the Underlying Action: (1) the Underlying Defendants are responsible for the construction of an extension to the chimneys of the 365 Building and the costs for that extension pursuant to New York City law; (2) the Underlying Defendants are responsible for damages that occurred to the 365 Building during construction activities at the project; and (3) the Underlying Defendants are liable for the failure to remove dissembled scaffolding and other debris on the roof of the 365 Building.  Dkt. No. 138-2 ¶¶ 41–54.

Catlin is an insurance company and the insurer on primary and excess policies issued to Broadway 371 with an effective date of December 21, 2013.  Dkt. No. 23 ¶ 33.  It is a Texas corporation with its principal place of business in Connecticut.  *Id.* ¶ 6.

GZA is a New York corporation.  *Id.* ¶ 13.  On or about December 6, 2012, it signed a Consultant Agreement with Broadway 371 as Owner to "perform consultation services regarding the geotechnical engineering, design, inspection and instrument installation services, including but not limited to, providing the labor and material for the installation of geostructural instrumentation to monitor 365 Broadway." *Id.* ¶ 25.

On January 14, 2020, Broadway 371 filed a third-party summons and complaint in the Underlying Action against GZA and others asserting claims for: (1) breach of contract; (2) negligence; (3) common-law indemnification; (4) common-law contribution; (5) contractual indemnification; and (6) contractual contribution.  Dkt. No. 103-8.

GZA is obligated by contract to indemnify, defend, and hold harmless Broadway 371 for lawsuits and claims arising out of its performance of services.  Dkt. No. 23 ¶ 26.  Specifically, GZA's Consultant Agreement states:

> To the fullest extent permitted by law, the Consultant shall indemnify, defend, and hold harmless the Owner and its parent company, corporations, subsidiary and

affiliated companies including joint ventures and partnerships and their respective agents, consultants, principals, members, partners, directors, direct and/or indirect owners, officers and employees from and against lawsuits, claims, causes of action, damages, losses, interest, judgments, liens and expenses (including but not limited to reasonable attorney's fees and legal costs, disbursements and expenses), for personal or bodily injury, sickness, disease or death or injury to or destruction of tangible property arising out of the performance of the services by the Consultant under this Agreement. This indemnification shall survive completion of the project.

*Id.*; Dkt. No. 124-3 § 8.1.

GZA is also obligated to maintain commercial general liability insurance and to name Broadway 371 and ELAD as Additional Insureds. Dkt. No. 23 ¶¶ 27–28. Commerce & Industry Insurance ("Commerce & Industry") issued a general liability policy to GZA with a policy period of February 28, 2012, to February 28, 2013, with Broadway 371 and others named as Additional Insureds on a primary, non-contributory basis with regard to work being performed for them by GZA. *Id.* ¶ 40.

## PROCEDURAL HISTORY

Plaintiff filed its complaint for declaratory relief in this Court against Champ Construction Company ("Champ"), American Empire Insurance Company ("American Empire"), Merchants Mutual Insurance Company ("Merchants Mutual"), Navigators Specialty Insurance ("Navigators Specialty"), Axis Insurance ("Axis"), and Navigators Insurance Company ("Navigators") on June 12, 2024. Dkt. No. 2.

On September 23, 2024, Plaintiff filed an Amended Complaint for Declaratory Relief adding GZA, Commerce & Industry, Ace, Gilsanz, and Continental Casualty Company ("Continental") as Defendants. Dkt. No. 23.[2] In the Amended Complaint, Plaintiff seeks declarations that: (1) Champ must defend and indemnify the Underlying Defendants in the

---

[2] Continental, Navigators Specialty, American Empire, and Axis answered the Amended Complaint. Dkt. Nos. 81, 83, 93, 100. Merchants Mutual has field an answer and crossclaims against all Defendants. Dkt. No. 104.

Underlying Action, *id.* ¶¶ 48–50; (2) Champ's insurers (American Empire and Axis) and its excess or umbrella insurers (Merchants Mutual, Navigators, and Navigators Specialty) must defend and/or indemnify the Underlying Defendants in the Underlying Action, *id.* ¶¶ 51–55; (3) GZA must defend and indemnify the Underlying Defendants in the Underlying Action, *id.* ¶¶ 56–58; (4) GZA's insurer (Commerce & Industry) and its excess or umbrella insurer (Ace) must defend or indemnify the Underlying Defendants in the Underlying Action, *id.* ¶¶ 59–63; (5) Gilsanz must defend and indemnify the Underlying Defendants in the Underlying Action, *id.* ¶¶ 64–66; and (6) Gilzanz's insurer (Continental) must defend and indemnify the Underlying Defendants in the Underlying Action, *id.* ¶¶ 67–71.

On December 9, 2024, GZA filed its motion to dismiss for lack of subject matter jurisdiction. Dkt. No. 101. The motion is supported by a memorandum of law and the declaration of counsel with ten exhibits. Dkt. Nos. 102–103. Catlin filed a memorandum of law in opposition to GZA's motion to dismiss on January 27, 2025. Dkt. No. 124. On February 5, 2025, GZA filed a reply memorandum of law in further support of its motion to dismiss. Dkt. No. 130.[3]

## LEGAL STANDARD

A court properly dismisses a claim for lack of subject matter jurisdiction under Rule 12(b)(1) when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L.*, 790 F.3d 411, 416–417 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113. "A motion to dismiss for lack of subject matter jurisdiction may 'raise a facial challenge based on the pleadings, or a factual challenge based on extrinsic evidence.'"

---

[3] Gilsanz, Ace, and Navigators also filed motions to dismiss, all of which were granted. Dkt. Nos. 108, 137, 155; *see* Dkt. Nos. 165, 177.

*U.S. Airlines Pilots Ass'n ex rel. Cleary v. US Airways, Inc*., 859 F. Supp. 2d 283, 296 (E.D.N.Y. 2012) (quoting *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996)).  Where the defendant challenges the legal sufficiency of a complaint's allegations, the court must treat all factual allegations as true and draw reasonable inferences in favor of the complaining party.  *Robinson v. Gov't of Malay*., 269 F.3d 133, 140 (2d Cir. 2001).  However, where the jurisdictional challenge is fact-based, the defendant may "proffer[] evidence beyond the [p]leading," and the plaintiff "will need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems' in the assertion of jurisdiction."  *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co*., 544 F.2d 1126, 1131 (2d Cir. 1976)).  In that case, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts."  *Guadagno*, 932 F. Supp. at 95.

## DISCUSSION

GZA argues that the Amended Complaint should be dismissed against it because the Amended Complaint alleges a dispute that is not ripe.  Dkt. No. 102 at 6–8; Dkt. No. 109.  GZA argues, in the alternative, that the Court should stay Catlin's claims against GZA pursuant to the *Wilton/Brillhart* abstention doctrine.  The first argument is without foundation, but the second argument is well-founded, and the case is accordingly stayed.

### I.    Jurisdiction

GZA's argument that Catlin's claim for a declaratory judgment is not ripe proceeds on the following syllogism: (1) "Courts have consistently ruled that 'the duty to indemnify is triggered by a determination of liability,'" Dkt. No. 102 at 7 (quoting *Admiral Ins. Co. v. Niagara*

*Transformer Corp.*, 57 F.4th 85, 94 (2d Cir. 2023)); (2) in addition, courts have "consistently held that where the contractual indemnitor is not an insured, its duty to defend is no broader than and is coextensive with its duty to indemnify," *id.*; (3) therefore, it follows that a claim based on the duty to defend—like a claim based on the duty to indemnify—cannot be ripe until there has been an "adjudication of liability made with regard to the State Court action," *id.* at 8. GZA's syllogism is faulty.

The Declaratory Judgment Act ("DJA") "creates a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy." *Admiral Ins. Co.*, 57 F.4th at 92 (quoting *United States v. Doherty*, 786 F.2d 491, 498 (2d Cir. 1986)).[4] Because the DJA "does not expand the subject-matter jurisdiction of the federal courts," *id.* (quoting *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011)), a declaratory judgment must adjudicate a case or controversy within the meaning of Article III, *see MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). The Court has jurisdiction under the DJA if there is "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). "Where the contingent event upon which the controversy rests is unlikely to occur, the controversy lacks 'sufficient immediacy and reality' to warrant declaratory relief." *In re Prudential Lines Inc.*, 158

---

[4] This Court has jurisdiction under 28 U.S.C. § 1332 "because there is complete diversity of citizenship between Catlin (a citizen of Texas) and all the defendants and the amount in controversy exceeds $75,000 exclusive of costs." Dkt. No. 2 ¶ 19. "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Correspondent Servs. Corp. v. First Equities Corp.*, 442 F.3d 767, 769 (2d Cir. 2006). Sitting in diversity, the Court applies New York State substantive law. *See Liberty Ins. Corp. v. Hudson Excess Ins. Co.*, 2025 WL 2325902, at *5 (2d Cir. Aug. 13, 2025).

F.3d 65, 70 (2d Cir. 1998) (quoting *Certain Underwriters at Lloyd's v. St. Joe Mins. Corp.*, 90 F.3d 671, 675 (2d Cir. 1996)).

GZA is correct as to the first step in its proposed chain of reasoning: claims based on the duty to indemnify frequently are not ripe until there has been a determination of liability.  *See Admiral Ins. Co.*, 57 F.4th at 94.  Unless and until there is "a practical likelihood that some form of judgment or settlement will be forthcoming," *Lafarge Can. Inc. v. Am. Home Assurance Co.*, 2018 WL 1634135, *5 (S.D.N.Y. Mar. 18, 2018), a declaratory judgment in most cases will serve little to no utility.  The request for declaratory relief would be purely hypothetical.  *See Admiral Ins. Co.*, 57 F.4th at 94; *FSP, Inc. v. Societe Generale*, 2003 WL 124515, at *5 (S.D.N.Y. Jan. 14, 2003).  But the same does not necessarily follow as to the duty to defend.  Thus, GZA's syllogism collapses upon the assumption that the duty to defend in the GZA agreement is coterminous with the duty to indemnify.

The contract between GZA and Broadway 371 is the primary indication that the obligation to indemnify and the obligation to defend are distinct.  The Court applies New York law to interpret the GZA Consultant Agreement.  "Under long-standing rules of contract interpretation, 'where the terms of a contract are clear and unambiguous, the intent of the parties must be found within the four corners of the contract, giving practical interpretation to the language employed and reading the contract as a whole.'" *Tomhannock, LLC v. Roustabout Res., LLC*, 128 N.E.3d 674, 675 (N.Y. 2019) (quoting *Ellington v. EMI Music, Inc.*, 21 N.E.3d 1000, 1003 (N.Y. 2014)).  The Court "first look[s] to the express contract language used to give effect to the intention of the parties." *McCleary v. City of Glens Falls*, 819 N.Y.S.2d 607, 609 (3d Dep't 2006).  A contract "must be construed in a manner which gives effect to each and every part, so as not to render any provision meaningless or without force or effect." *Nomura Home Equity Loan, Inc., Series 2006-FM2 v.*

*Nomura Credit & Cap., Inc.*, 92 N.E.3d 743, 748 (N.Y. 2017). And "the entire contract must be reviewed and 'particular words should be considered, not as if isolated from the context, but in light of the obligation as a whole and the intention of the parties as manifested thereby.'" *Riverside S. Planning Corp. v. CRP/Extell Riverside, L.P.*, 920 N.E.2d 359, 363 (N.Y. 2009) (quoting *Atwater & Co. v. Panama R.R. Co.*, 159 N.E. 418, 419 (N.Y. 1927)). Those principles apply to the interpretation of a non-insurer's contractual obligation to indemnify or defend his contractual counterparty, requiring the Court to interpret the "terms of the contract, strictly construed." *Dresser-Rand Co. v. Ingersoll Rand Co.*, 2015 WL 4254033, at *7 (S.D.N.Y. July 14, 2015). "[C]ontractual defense obligations are generally treated like any other contractual provision," and where "a contractual defense obligation is, by its own terms, exceedingly broad, a court will not artificially circumscribe it simply because the indemnitor is not an insurer." *Id.*

As noted previously, the relevant section of GZA's Consultant Agreement provides:

> To the fullest extent permitted by law, the Consultant shall indemnify, defend, and hold harmless the Owner and its parent company, corporations, subsidiary and affiliated companies including joint ventures and partnerships and their respective agents, consultants, principals, members, partners, directors, direct and/or indirect owners, officers and employees from and against lawsuits, claims, causes of action, damages, losses, interest, judgments, liens and expenses (including but not limited to reasonable attorney's fees and legal costs, disbursements and expenses), for personal or bodily injury, sickness, disease or death or injury to or destruction of tangible property arising out of the performance of the services by the Consultant under this Agreement. This indemnification shall survive completion of the project.

Dkt. No. 124-3 § 8.1.

Interpreting the express language of the GZA Consultant Agreement strictly and as it is drafted, the agreement imposes three separate obligations on GZA: (1) it is required to indemnify the Owner; (2) it is required to "defend" the Owner; and (3) it is required to "hold harmless" the Owner. Each of those obligations carries its own separate ordinary meaning. A party who agrees to indemnify another has assumed a contractual duty "to make good on any loss, damage, or

liability incurred by another.'"  1 Couch on Ins. § 1:7 (3d ed. 2025) (quoting Black's Law Dictionary (11th ed. 2019)).  The duty to indemnify applies when the indemnitee experiences "a covered loss."  *Liberty Ins. Corp. v. Hudson Excess Ins. Co.*, 2025 WL 2325902, at *5 (2d Cir. Aug. 13, 2025) (quoting *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 477 N.E.2d 441, 425 (N.Y. 1985)).  "[T]he duty to indemnify turns not on the allegations of the complaint, but on the liabilities as borne out by the facts."  *Travelers Prop. Cas. Corp. v. Winterthur Int'l*, 2002 WL 1391920, at *6 (S.D.N.Y. June 25, 2002).  The indemnity provision in this contract would apply, for example, if the plaintiff in the Underlying Action in fact suffered "a personal or bodily injury, sickness, disease or death or injury to or destruction of tangible property" and such injury was caused by GZA.  Dkt. No. 124-3 § 8.1.  GZA's obligation to "hold harmless" Broadway 371 "from" lawsuits connotes the duty "to absolve (another party) from any . . . liability arising from the transaction."  Black's Law Dictionary (10th ed. 2014).  In other words, by "holding harmless" Broadway 371, GZA contracted not to initiate any action *against* Broadway 371 in connection with the contract.  *See Hauschild v. U.S. Marshals Serv.*, 2018 WL 3014095, at *8 (S.D.N.Y. June 15, 2018) (explaining that a hold harmless provision protects the contracting counterparty "against liability for damages" from the party making the promise).  Finally, the contract imposes on GZA a duty to defend Broadway 371 "against lawsuits, claims, [and] causes of action."  Dkt. No. 124-3 § 8.1.  In contrast to the duty to indemnify, which occurs retroactively after the costs are actually borne by the indemnitee, the duty to defend "connotes an obligation of active responsibility, from the outset, for the promise's defense," against the covered claims.  *Crawford v. Weather Shield Mfg., Inc.*, 187 P.3d 424, 431 (Cal. 2008).

The inclusion of "defend" would be illusory if, as GZA contends, it imposed no more than an obligation on GZA, after liability was determined, to reimburse Broadway 371 for its legal

expenses.  The GZA Consultant Agreement already requires GZA to reimburse the Owner for its "expenses (including but not limited to reasonable attorney's fees and legal costs, disbursements, and expenses)."  Dkt. No. 24-3 § 8.1.  The obligation to "defend" the Owner does more and different work.  It requires GZA, at a minimum, to fund the Owner's reasonable legal expenses as they are incurred and not only after a determination of liability.  The inclusion of both terms indicates that "the parties understood the duty to defend was distinct from the duty to indemnify." *VR Optics, LLC v. Peloton Interactive, Inc.*, 2023 WL 2031213, at *9 (Fed. Cir. Feb. 16, 2023); *see* 3 Bruner & O'Connor Construction Law § 10:60 (2024) ("The inclusion of the term 'defend' arguably broadens the scope of the undertaking from one of mere reimbursement to one requiring the provision of a defense with respect to claims made against the indemnitee.").

Indeed, if GZA were correct that the duty to defend did nothing that the duty to indemnify did not already do, the only circumstance in which the Owner would be entitled to reimbursement would be those in which there was a determination of liability.  *See* Dkt. No. 102 at 7.  If Broadway 371 was successful in convincing the underlying plaintiff to dismiss its lawsuit and there was no determination of liability, on GZA's theory, Broadway 371's claim (and therefore Catlin's claim) would never become ripe.  Broadway 371's success in the Underlying Action would come at the cost that the trigger event for the reimbursement of its fees would never occur.  By winning, it would lose at the same time.

Once the flaw in GZA's parallel construction of defend and indemnify is exposed, the conclusion that Catlin's claim is ripe readily follows.  A claim for a declaratory judgment is not premature because it involves disputed facts that are pending before (but not yet resolved by) a state court.  *See Liberty Ins. Corp.*, 2025 WL 2325902, at *4.  A federal court sitting in equity to resolve a claim for a declaratory judgment is just as capable of resolving any antecedent facts upon

which a duty to defend or indemnify applies as is a state court. *Id.* at *5. Here, GZA signed a contract that required it to defend Catlin's insured from lawsuits, claims, and causes of action "arising out of the performance of the services by [GZA] under this Agreement." Dkt. No. 124-3 § 8.1. This Court, no less than a state court, can determine whether the lawsuit against Catlin's insured arises out of the performance of services by GZA under the GZA Consultant Agreement. *Id.* at *5. And Catlin has both pleaded and shown that it is not merely hypothetical but concrete and real that its insured, to whom it is subrogated, will have a claim against GZA for its defense costs. Broadway 371 is currently incurring those costs and it is plausible they arise out of GZA's performance under the contract. Catlin, which insures Broadway 371, thus is entitled to a determination whether the costs that Broadway 371 reasonably incurs are within the scope of the obligation to defend that GZA contractually assumed. With respect to ripeness, it is irrelevant that the same questions that the Court might have to address in determining whether GZA is obligated to defend Broadway 371 will be the same as or similar to those that the state court might have to address in determining Broadway 371's liability. If the state court were not in a position to make a determination of liability because, for example, the claims against Broadway 371 were ultimately dismissed for procedural reasons, Catlin would still have the right to come to this Court to ask it whether GZA was obligated to pay Broadway 371's costs of defense. The fact that the state court may, in the course of deciding liability, address questions that also bear on whether there is a duty to defend implicates abstention, as discussed below. It does not go to the question of ripeness.

To support its argument that Catlin's claims are not ripe, GZA relies also on several New York cases that held "where the contractual indemnitor is not an insurer, its duty to defend is no broader than and is coextensive with its duty to indemnify." Dkt. No. 102 at 7 (citing *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 8 N.Y.S.3d 314, 315 (1st Dep't 2015);

*Sawicki v. GameStop Corp.*, 966 N.Y.S.2d 447, 450 (2d Dep't 2013); *Steuhl v. Home Therapy Equip., Inc.*, 857 N.Y.S.2d 335, 339–340 (3d Dep't 2008)).   But those cases do not speak to ripeness.  They do not stand for the proposition that a claim based on a contractual duty to defend does not present a ripe concrete dispute suitable for a federal declaratory judgment until defense costs are incurred or are reasonably expected to be incurred.   Rather, read in context, they stand for the important but more limited principles that (1) when a contractual duty to defend turns upon the occurrence of a condition—whether it be a finding of negligence or the indemnitor itself having been negligent—the court cannot grant partial summary judgment when disputes of fact remain as to the existence of that condition; and (2) ordinarily, when the condition for defense costs is the existence of liability and the claim for defense costs is filed as part of the same case as the underlying personal injury claim, both the claim for defense costs and the personal injury claim should be decided at the same time.  *See Brasch v. Yonkers Constr. Co.*, 762 N.Y.S.2d 626, 628–629 (2d Dep't 2003) (personal injury action; reversing the Supreme Court's grant of summary judgment to third-party plaintiff because there were issues of fact as to whether the contractual conditions for indemnification were satisfied); *Sawicki*, 966 N.Y.S. at 450 (action to recover damages for personal injuries; reversing summary judgment because indemnitee failed to establish it was entitled to judgment as a matter of law with respect to contractual indemnification); *Bellefleur v. Newark Beth Isr. Med. Ctr.*, 888 N.Y.S.2d 81, 83–84 (2d Dep't 2009) (action to recover damages for personal injuries and third-party action for indemnification and defense; reversing conditional order of summary judgment as premature).  Tellingly, in virtually all of the cases, the claim for contractual indemnification was prosecuted alongside the claim for personal injury.  In none of the cases cited by GZA does the court dismiss the claim for defense costs as premature.  *Inner City Redevelopment Corp.*, 8 N.Y.S.3d at 315; *Sawicki*, 966 N.Y.S. at 450;

*Steuhl*, 857 N.Y.S.2d at 340.  In other words, the cases proceed on the premise that GZA seeks to refute—that in state court a claim for indemnification and/or defense is ripe (in the sense that it may be brought and heard) at the latest when the underlying claim for personal injury as to which defense costs are incurred is asserted.[5]

In clarifying that the duty of the contractual indemnitor to defend is no broader than its duty to indemnify, the courts thus are best understood only to distinguish the non-insurer's contractual duty to defend from the insurer's contractual duty to defend.  As a matter of insurance law, "[a]n insurer's duty to defend 'arises whenever the allegations within the four corners of the underlying complaint potentially give rise to a covered claim.'" *Worth Constr. Co. v. Admiral Ins. Co.*, 888 N.E.2d 1043, 1045 (N.Y. 2008) (quoting *Frontier Insulation Contractors v. Merchs. Mut. Ins. Co.*, 690 N.E.2d 866, 868 (N.Y. 1997)); *see Charter Oak Fire Ins. Co. v. Zurich Am. Ins. Co.*, 462 F. Supp. 3d 317, 323–324 (S.D.N.Y. 2020).  Alternatively, the insurer's duty to defend may arise based on the "information possessed by the insurer."  *Charter Oak*, 462 F. Supp. 3d at 324 (quoting *Fitzpatrick v. Am. Honda Co.*, 575 N.E.2d 90, 93 (N.Y. 1991)).  As to a non-insurer,

---

[5]  To the extent GZA argues that these cases stand for the rule that a defense obligation will only attach upon a finding of liability or negligence, even where the contract contains no such terms, that is incorrect.  *See* Dkt. No. 101 at 8.  Where New York courts have considered a contract in which a non-insurer party contracts to defend the counterparty without conditioning the duty on a party's negligence or any other condition, they have declined to impose a atextual limitation on that promise.  In *McCleary*, the court was "not persuaded" by the "contention that [the party that contracted to defend] is not required to defend the [counterparty]" where there had been no finding of liability because "[n]othing in the broad language of the [agreement] conditions" that duty "on a predicate finding of fault."  819 N.Y.S.2d at 611; *see also In re Bridge Constr. Servs. of Fla., Inc.*, 140 F. Supp. 3d 324, 335 (S.D.N.Y. 2015) (agreement to defend that "does not turn on" negligence "makes it plain that Bridge's duty to defend commences when a claim is made against [the counterparty] arising out of the acts or omissions of Bridge"); *Bermejo v. N.Y. City Health & Hosps. Corp.*, 989 N.Y.S.2d 490, 494 (2d Dep't 2014) (holding there was a duty to defend where the indemnification clause did not, by its terms, limit indemnification only to claims arising out of negligence); *Di Perna v. Am. Broad. Cos., Inc.*, 612 N.Y.S.2d 564, 567 (1st Dep't 1994) (same).

however, the court in a case involving a duty to defend may need to address merits questions relevant to the underlying dispute, as the "breadth of a non-insurer's contractual defense obligations is defined solely by the terms of the contract, strictly construed." *Dresser-Rand Co.*, 2015 WL 4254033, at *6. Thus, while it may be that the claim for a duty to defend from an insurer can be decided without having to address the merits of the underlying dispute, the claim for a duty to defend from a non-insurer frequently will require a decision on issues that will also be raised in the underlying case and thus may be best deferred and decided in tandem with the decision in the underlying case. But the fact that the court may have to address a merits question does not make the lawsuit unripe. *See Liberty Ins. Corp.*, 2025 WL 2325902, at *4. It may just mean that, as a matter of prudence, decision is best deferred until the underlying case is also decided.

## II.    Abstention

In the alternative, GZA argues that Catlin's claims against it should be stayed pursuant to the *Wilton/Brillhart* abstention doctrine. Dkt. No. 102 at 9–10; *see Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942).

The doctrine of *Wilton* abstention clarifies that federal courts may, as a matter of discretion, dismiss or stay an action seeking a declaratory judgment in consideration of another proceeding in state court that addresses the same or similar issues. It is the function of the DJA to "create[e] a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy, or in which the party entitled to such a remedy fails to sue for it." *Doherty*, 786 F.2d at 498–499 (quoting C. Wright, *The Law of Federal Courts* § 100, at 671 (4th ed. 1983)). However, the jurisdiction of the district court under the DJA is permissive, not obligatory. The DJA "created an opportunity, rather than a duty, to grant [declaratory] relief to qualifying litigants" and thus, "a district court is

authorized in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment." *Wilton*, 515 U.S. at 288.

As such, the Second Circuit has held that a district court considering whether to abstain from issuing declaratory judgment should consider the following six factors "to the extent they are relevant in a particular case":

> (1) whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved; (2) whether such a judgment would finalize the controversy and offer relief from uncertainty; (3) whether the proposed remedy is being used merely for procedural fencing or a race to res judicata; (4) whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court; (5) whether there is a better or more effective remedy; . . . and (6) whether concerns for judicial efficiency and judicial economy favor declining to exercise jurisdiction.

*Admiral Ins. Co.*, 57 F.4th at 99–100; *see also Starr Indem. & Liab. Co. v. Exist, Inc.*, 2024 WL 503729, at *2 (2d Cir. Feb. 9, 2024) (summary order) (holding that district court need not consider all of the *Admiral* factors where the omitted factors were "either irrelevant or deserve[d] less than 'significant weight'").

*Wilton* abstention is "premised on the notion that a federal court should refrain from issuing declaratory judgments on issues that can better be settled in [a] proceeding pending in the state court." *Freeman v. Giuliani*, 2024 WL 5239410, at *12 (S.D.N.Y. Dec. 27, 2024) (quoting *Stoncor Grp. v. Peerless Ins. Co.*, 322 F. Supp. 3d 505, 514 (S.D.N.Y. 2018)). This is most often the case "where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 104 (2d Cir. 2012) (quoting *Dittmer v. Cnty. of Suffolk*, 146 F.3d 113, 118 (2d Cir. 1998)). But "courts in this District considering requests for *Wilton* abstention routinely ask not only whether the parties and issues are the same but also whether the scope of the related proceeding is equivalent, whether the claims of the parties to the declaratory judgment

action can be satisfactorily adjudicated in that action, and whether such parties are amenable to process in that proceeding." *Freeman*, 2024 WL 5239410, at *13.

In the Underlying Action, EMFT seeks to hold Broadway 371 responsible for damages to 365 Broadway during construction at 371 Broadway. Dkt. No. 138-2 ¶¶ 49–54. Broadway 371 has filed a third-party complaint against GZA, as well as a variety of other entities, alleging negligence and breach of contract and seeking indemnification of Broadway 371 for any amounts for which it is found liable. Dkt. No. 103-8. Broadway 371 has not, in the state court action, brought a cause of action alleging that GZA is liable to defend (as opposed to indemnify) the claims against it. Additionally, Catlin is not a party in the Underlying Action—although here it asserts only the contractual rights of Broadway 371 as to GZA.

Considering the relationship between the Underlying Action and the request for declaratory relief before this Court, it appears prudent that this Court stay its hand. During the present suit, in order to decide whether GZA has a duty to defend, this Court would be called upon to decide whether the damage to the 365 Building was caused by conduct "arising out of the performance of the services by [GZA] under" its contract. Dkt. No. 124-3 § 8.1. The state court will be required to answer that exact same question in determining whether GZA is required to indemnify Broadway 371. Dkt. No. 103-8 ¶¶ 362–368. The state court also will be required to answer that question in addressing other claims brought by Broadway 371 as third-party plaintiff against GZA including those for contractual contribution and for breach of contract. *Id.* ¶¶ 343–347, 349–361. To establish GZA's liability on the contractual breach claims, Broadway 371 would need to prove that it was damaged as a result of conduct by GZA occurring within the scope of its responsibilities as delineated by the contract. *See Mohegan Lake Motors, Inc. v. Maoli*, 559 F. Supp. 3d 323, 345–346 (S.D.N.Y. 2021) (noting that to "prevail on a breach of contract claim" under New York law,

17

a party must prove that "(1) a valid contract existed between the parties; (2) the adversary breached the contract; (3) the party performed its obligations under the contract; and (4) the party was damaged as a result of the breach"). Thus, the outcome of the declaratory action before this court "may be determined only by resolving a factual issue" that is also before the state court. *Stoncor*, 322 F. Supp. 3d at 516.

The parties already, on the limited factual record before this Court, vigorously dispute whether the alleged conduct arises out of GZA's actions. *See* Dkt. No. 102 at 12; Dkt. No. 124 at 10–11. They also dispute whether the contract in which the provision appears was signed and valid. Dkt. No. 130 at 5. Therefore, in order to issue any declaratory relief, the Court is "called upon to characterize the underlying facts so that it may evaluate the nature of the conduct alleged" and whether it is within the ambit of the contract. *Lafarge*, 2018 WL 1634135, at *9. Making such a determination "would risk duplicative or contradictory fact finding—a risk that cautions strongly against the exercise of discretionary jurisdiction." *Id.*; *see also Hou. Casualty Co. v. Andrew Smith Co.*, 2022 WL 16840237, at *4 (S.D.N.Y. Oct. 28, 2022) (finding a stay appropriate because the court would be required to make a factual determination also in front of the district court before deciding if there was an obligation to reimburse); *Stoncor*, 322 F. Supp. 3d at 516 (staying the action where "this case . . . represents the atypical case where the duty to defend is contingent on a factual issue squarely raised in the state court proceeding"). "[T]he Supreme Court has cautioned that 'ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in state court presenting the same issues, not governed by federal law, between the same parties." *Travelers Indem. Co. v. Philips Elecs. N. Am. Corp.*, 2004 WL 193564, at *2 (S.D.N.Y. Feb. 3, 2004) (quoting *Brillhart*, 316 U.S. at 495).

Litigation of the question whether the damage was suffered as a result of the performance by GZA of its contractual responsibilities both in this Court and in state court would invariably cause friction between the state and federal court systems and, correspondingly, a stay will serve the interests of efficiency. Even though Catlin is not a party to the state court action, it is suing here in the shoes of Broadway 371. *See Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d Cir. 1999) (the doctrine of equitable subrogation "allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims the insured may have had against third parties legally responsible for the loss"). Catlin's interests thus are aligned with those of its insured (Broadway 371), which *is* party to the action below. *See Phx. Ins. Co. v. Mod. Sprinkler Corp.*, 2011 WL 13305168, at *8 (E.D.N.Y. Mar. 18, 2011) ("With respect to privity between insured and its insurer, for collateral estoppel purposes, courts have repeatedly deemed that an insured is generally in privity with its insurer, whether or not the insured is a named party in the action." (quoting *Early v. King*, 881 N.Y.S.2d 363 (N.Y. Sup. Ct. 2009)). Accordingly, a ruling by the state court either that Catlin's performance of its contractual responsibilities was a cause of the damage or that it was not would likely be preclusive of the same issue in this Court. GZA, having been given a full and fair opportunity in state court, would hardly complain if this Court were to hold that it could not relitigate here an issue GZA lost in that court. *See Purdy v. Zeldes*, 337 F.3d 253, 258 (2d Cir. 2003) ("The doctrine of collateral estoppel prevents a plaintiff from relitigating in a subsequent proceeding an issue of fact or law that was fully and fairly litigated in a prior proceeding."). Catlin would be challenged to relitigate in this Court an issue that Broadway 371, with whom it is in privity, lost in state court. *See Wasau Underwriters Ins. Co. v. Gamma USA, Inc.*, 89 N.Y.S.3d 186, 189 (2d Dep't 2018) ("A subrogee 'is subject to any defenses or claims which may be raised against the subrogor.'" (quoting *Solomon v. Consol. Resistance Co. of Am.*,

468 N.Y.S.2d 532, 533 (2d Dep't 1983))). Likewise, were this Court to determine, before the state court, that the damage *did* arise out of GZA's contractual activities, the state court could not reach a contrary conclusion in favor of GZA. If this Court reached the question first but determined instead that the damage *did not* arise out of conduct contemplated in the contract, GZA could use that conclusion defensively against Broadway 371.

Under *Wilton* abstention, it should be the state court that makes the decision in the first instance. Unlike this court's ability to issue declaratory judgment, the state court does not have discretion on whether to address if GZA is liable for damage to the 365 building. Also, the question is one of pure state law. "Abstention under *Wilton* is particularly appropriate where the suit only presents issues of state, but not federal, law." *TIG Ins. Co. v. Fairchild Corp.*, 2008 WL 2198087, at *4 (S.D.N.Y. May 27, 2008); *see also Cadle Co. v. Bankers Fed. Sav. FSB*, 929 F. Supp. 636, 639 (E.D.N.Y. 1996) ("Declaratory judgment actions which have as their underlying basis rights that are essentially governed by state law present particularly appropriate cases for application of the abstention doctrine.") The question can also be framed more simply as one of usefulness. "Courts frequently find that declaratory judgment will not serve a useful purpose when the claim is duplicative of another claim in the same action." *MSR Tr. v. Nationsstar Mortg. LLC*, 2022 WL 3441613, at *12 (S.D.N.Y. July 28, 2022), *report and recommendation adopted*, 2022 WL 17689839 (S.D.N.Y. Dec. 15, 2022). And "[a]ll else being equal, reducing the number of court proceedings involved with any given issue entails a more efficient use of judicial resources." *TIG Ins. Co.*, 2008 WL 2198087, at *4.

To be sure, Catlin is not a party to the proceeding below. However, there is no requirement under *Wilton* abstention that each party to the federal case also be a party to the state case. "The text of the Declaratory Judgment Act . . . does not limit the Court's discretion to abstain from

providing such a remedy only when a parallel action exists." *Stoncor*, 322 F. Supp. 3d at 514.  Nor did the Supreme Court so limit the abstention doctrine in *Wilton* itself, where it declined to "delineate the outer boundaries of that discretion in other cases, for example, cases raising issues of federal law or cases where there are no parallel state proceedings." 515 U.S. at 290.  And the underlying reasoning of *Wilton* that "a federal court should refrain from issuing declaratory judgments on issues that 'can be better settled in the proceeding pending in the state court' . . . can be true even when the state court action is not a parallel proceeding."  *Stoncor*, 322 F. Supp. 3d at 514 (quoting *Wilton*, 515 U.S. at 282); *see also Lafarge*, 2018 WL 1634135, at *8 (abstaining where the insurer was not party to the state court action because the "factual and legal issues in both cases overlap significantly"); *Hou. Casualty Co.*, 2022 WL 16840237, at *3 ("Although this action is not directly parallel to the Underlying Proceedings, the considerable overlap of factual and legal issues among the cases tips the scale in favor of abstention."); *cf. Liberty Ins. Corp.*, 2025 WL 2325902, at *8 (district court appropriately declined to stay its declaratory judgment action where it "observed that the state court determination on the scope of the work that [the contractor] was contractually bound to perform for [the other party] is a separate inquiry than that required for indemnification").

Considering the "totality of the circumstances," and whether declaratory judgment would "serve a useful purpose" or "afford relief from uncertainty . . . and controversy," a stay is appropriate.  *Starr Indem.nity & Liability Co. v. Exist, Inc.*, 2023 WL 4029821, at *3 (S.D.N.Y. June 14, 2023) (quoting *Nationstar Mortg. LLC*, 2022 WL 3441613, at *12).  The centrality of the question of whether the damage to the 365 Building arose out of GZA's contractual conduct both to this proceeding and to the state proceeding outweighs the fact that Catlin is not a party to the proceeding below.  The Court will stay Catlin's request for declaratory relief as to GZA until the

state court is first given the opportunity to pass on questions pertaining to the contractual dispute between GZA and Catlin.[6]  When that happens, and depending on the state court's holding, Catlin can move before this Court to lift the stay.  *See Lafarge*, 2018 WL 1634135, at *10; *Stoncor*, 322 F. Supp. 3d at 519.[7]

## CONCLUSION

GZA's motion to dismiss is DENIED.  GZA's alternative request for a stay is GRANTED.

The Clerk of Court is respectfully directed to close Dkt. No. 101.

SO ORDERED.

Dated: August 29, 2025
       New York, New York

_____
                        LEWIS J. LIMAN
                        United States District Judge

---

[6] The Court's holding is specific to the contract between GZA and Broadway 371, and it has no bearing on claims by Catlin against the other Defendants in the present action for declaratory relief.

[7] It might appear from first glance that the Court's ruling with respect to abstention renders its ruling with respect to ripeness illusory—in effect taking from one hand what the Court has given with the other.  Such an impression, however, would be mistaken.  GZA's contractual ripeness argument would deprive Catlin of the benefit of the declaratory judgment remedy even in those cases were a state court action had not yet commenced or where, depending on the ways the issues were framed, the issue of GZA's liability would be unlikely to be decided, at least on a speedy basis.  The Court's abstention ruling is based on the particular facts of this case in which the issue that the Court would be confronted with deciding in ruling on the declaratory judgment is identical to the same issue raised in a pending and active state court proceeding.